Argued and submitted July 30, affirmed in part,
reversed in part and remanded September 29, 1980

ABRAHAM CRUZ,
*Petitioner,*

*v.*

OREGON STATE PENITENTIARY,
*Respondent.*

(No. 10-79-309, CA 16059)

617 P2d 644

Ernest Estes, Deputy Public Defender, argued the cause for petitioner. On the brief were Gary D. Babcock, Public Defender, and Judith H. Stone, Certified Law Student, Salem.

Scott McAlister, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a prison discipline proceeding in which the petitioner, an inmate at the Oregon State Penitentiary, was charged with violation of two of the institution's rules, *viz.,* OAR 291-105-015(10), which provides:

> "An inmate shall promptly comply with valid orders of staff members. An order includes written, verbal or gestured communication which directs or forbids the doing of some act over which the inmate had control."

and OAR 291-105-015(14) (attempt to violate a rule) for attempting to violate OAR 291-105-015(4), which provides:

> "Except when absolutely necessary for self-defense, no inmate shall engage in a fight or intentionally inflict physical injury upon another person."

The petitioner was found guilty[1] of violating both rules, and the Disciplinary Committee recommended that he serve three months in segregation. That recommendation was subsequently approved by the institution superintendent. Petitioner seeks judicial review of the order of the superintendent, contending, among other things, that he was denied the right to an investigation pursuant to Oregon State Correction Division rules. We agree, and reverse.

The case arose out of an incident which occurred on October 24, 1979. On that date, while the petitioner was being moved into the S & I unit, a sergeant directed him to give his name and number. Petitioner refused to comply and, during the strip search which occurs in connection with entry into the S & I unit, took his belt out of his trousers, threw his trousers on the floor and stepped back against the door with the belt clenched in his hand and held over his

---

[1] Petitioner actually had two hearings. The first was deemed invalid pursuant to the opinion of the United States District Court in *Bartholomew v. Reed,*477 F Supp 223 (DC Or 1979). Petitioner's appeal here is from a decision after a rehearing.

head as if he were about to assault one of the staff. After several attempts to persuade him to drop the belt were unsuccessful, it was necessary to use force to take the belt away from him.

At the hearing, an extended colloquy occurred between the presiding officer and the petitioner. It is necessary to set that colloquy out at length in order to deal with petitioner's claims. The pertinent portions of the record are set forth as follows:

"WILLIAMS [the presiding officer]: And what questions do you wish to have posed to those witnesses?

"CRUZ: I want to know which one of them threatened me verbally, saying that he was going to kick my [posterior], called me a dirty [epithet] Mexican.

"WILLIAMS: The question at hand in this particular matter, Mr. Cruz, is your particular actions relevant to the incident which occurred on October 23, 1979. The case is not concerned with any statements that may have been made to you by staff members * * *.

"CRUZ: Man, I was (unintelligible words) my [epithet] (unintelligible). Man, they were going to kick my [posterior].

"WILLIAMS: Mr. Cruz, you will not use abusive language during the course of this hearing.

"CRUZ: I'll say whatever I want to say. I don't care. You're holding me here for attempted assault to somebody when I was only doing my best to protect my [epithet] [posterior].

"* * *

"CRUZ: I want them people that was there. I want to ask them questions, if not myself, then one of you people in here to ask them for me.

"WILLIAMS: I'm asking you - what questions are they?

"CRUZ: The questions are - which one of them verbally assaulted me, verbally (unintelligible) me? Whether I was wearing any clothes when he (unintelligible) me? Why he threatened me? And I want to know how they can say I was trying to assault somebody when I was trying to get away from them -

trying to run away from them. Those are the questions I want to ask.

"WILLIAMS: Mr. Cruz * * *.

"CRUZ: And I want to be present when you ask those questions. I know that's one of my rights.

"WILLIAMS: Mr. Cruz, I do not find that those questions are relevant to this particular matter.

"CRUZ: They are relevant man, because if I was supposed to have assaulted somebody - one, me, myself against four grown men, even though I am a grown man myself. I'm not going to assault somebody. I ain't that dumb. Especially when I'm outnumbered. I'm going to try to run. I don't like to be threatened.

"WILLIAMS: I believe that Sgt. Russell is present in the segregation building today - is he not, Lt. Patton?

"PATTON: Yes he is.

"CRUZ: I want the others present too, or one at a time. I (unintelligible words) - you're going to another one of the inmates that was threatened and assaulted. I want the same privileges he got.

"WILLIAMS: Your questions are: Were you wearing clothes on this particular date and time? Where you threatened by the staff members?

"CRUZ: Which one of them threatened me? I was threatened.

"WILLIAMS: You're presuming that someone did threaten you.

"CRUZ: I'm making another (unintelligible)

"WILLIAMS: And I'm saying that that particular question is not relevant because you are making an allegation and that can be dealt with separate and * * *.

"CRUZ: The only way an allegation can be * * *.

"WILLIAMS: This is a disciplinary proceeding, Mr. Cruz. If you wish to make allegations against staff members, there are three appropriate channels for so doing. One is the Corrections Division ombudsman, the second is the Superintendent and the third is the grievance procedure. I am not going to entertain allegations against staff members during the course of the disciplinary proceeding * * *.

"* * * * *

"WILLIAMS: What other staff members were present at that time Sgt. Russell?

"RUSSELL: Let me see - there was Officer Reid, Sgt. Good, Cpl. Hoover, ah, I believe that was all present at that time, and myself.

"WILLIAMS: Thank you Sgt. Russell. You're excused.

"CRUZ: I have another questions.

"WILLIAMS: What is the nature of your questions, Mr. Cruz?

"CRUZ: I want to know if he noticed anything unusual about my behavior, whether I was under normal behavior, or abnormal behavior?

"WILLIAMS: I'm ruling that question as being irrelevant because Sgt. Russell is not familiar with you nor is he a psychiatrist, nor is he qualified to make those kinds of determinations * * *.

"* * * * *.

"WILLIAMS: I don't find the question is relevant. Your're [sic] calling for an assumption on the part of Sgt. Russell, which I don't find that he is qualified to give. You're excused, Sgt. Russell.

"* * * * *

"WILLIAMS: Okay, do you have anything else, Mr. Cruz?

"CRUZ: Yeh, I want the other people here - I want to question them.

"WILLIAMS: Posing the same questions, Mr. Cruz?

"CRUZ: Yes, including the fourth one, the one who denied it.

"WILLIAMS: I will not pose those questions Mr. Cruz. I would find that those additional staff members - that it is not necessary to call them in since their information would be corroborated with the information provided by Sgt. Russell."

Petitioner's claim was that he was threatened and that he was defending himself during the events which were the subject of this disciplinary proceeding.

The right to an investigation was set out by Temporary Rule VI(G)(5) (now OAR 291-105-058):[2]

"5. Investigation

"In formal hearings, the inmate has a right to request that an investigation be conducted. A designee of the Hearings Officer shall conduct the investigation.

"a. An investigation shall be conducted upon the inmate's request if an investigation will assist in the resolution of the disciplinary proceedings and the information sought is within the ability of the facility to procure.

"\* \* \* \* \*.

"c. The Disciplinary Adjudicator or Hearings Officer shall allow the inmate access to the results of the investigation unless disclosure of the investigative results would constitute a threat to the safety and security of the institution."

The calling of witnesses by an inmate was governed by Temporary Rule VI(G)(6) (now OAR 291-105-061):[3]

"6. Witnesses

"Inmates participating in a formal hearing have the right to call witnesses to testify before the Hearings Officer. Witnesses may include inmates, staff or other persons.

"\* \* \* \* \*.

"c. The Hearings Officer may exclude a specific inmate or staff witness upon finding that the witness' testimony would not assist in the resolution of the disciplinary proceeding, or presents an immediate undue hazard to institutional security. If a witness is excluded the reason(s) shall be made a part of the record.

"\* \* \* \* \*.

---

[2] The rules were adopted by the Corrections Divison on October 19, 1979. They have, since this hearing, been superseded. The present rules are not, however, materially different from those in effect at the time of this hearing.

[3] See fn 2, *supra.*

"h. All questions which will assist in the resolution of the disciplinary proceedings as determined by the hearings officer shall be posed."

Petitioner contends that the actions of the hearings officer, as set forth above, violated his rights under one or both of the above rules in three separate instances. We shall discuss each of the instances separately but do note that, as the respondent points out, all of petitioner's arguments in this case are directed to the attempted assault charge. The petitioner does not in any way challenge the correctness of the finding that he had violated Rule 10. It follows that, whatever this court may say with respect to the validity of the Rule 14 violation, the finding of violation of Rule 10 remains unaffected.

## FAILURE TO INVESTIGATE

Petitioner first claims that the Disciplinary Committee erred in failing to grant him an investigation pursuant to OAR 291-105-058(a), *supra.* The respondent answers, somewhat ingenuously, that petitioner, in fact, did not want an investigation, but rather wanted four specific named witnesses called and questioned. Respondent argues,

"* * * this is not the 'inartful' request for investigation sanctioned in *Geddes v. OSP,* 26 Or App 303, 552 P2d 568 (1976), but a calculated choice between meaningful alternative evidentiary resources provided by the new disciplinary procedures."

We would agree with respondent's characterization of petitioner's effort had the petitioner, in fact, been afforded an opportunity to have all of the four named witnesses called. Since, however, the Disciplinary Committee did not choose to call all four of the witnesses named by the petitioner, the respondent cannot escape its obligation to investigate merely by pointing out that, had it behaved properly under another rule, an investigation would not have been necessary. We hold, as the respondent apparently has anticipated that we would, that a request to have witnesses presented is a request for an investigation in

the event that not all of the witnesses requested by the petitioner are called.

## FAILURE TO CALL WITNESSES

Petitioner next claims that the Disciplinary Committee erred in failing to call the witnesses he had specified in his testimony pursuant to OAR 291-105-061, *supra.*

■ Only one of the people involved, Sgt. Russell, was called. The hearings officer concluded that the other three witnesses should be excluded because "there was no reason to believe that their testimony would add anything to the statement made by Sgt. Russell and * * * their testimony would not therefore assist further in the resolution of the proceeding."

In making his ruling, the presiding officer had invoked the magic words of OAR 291-105-061(c), but that invocation does not end the matter. His conclusion can stand only if, on an examination of the record, it appears correct to say that the testimony of the other three individuals would not, in fact, have assisted in the resolution of the disciplinary proceeding. On an examination of this record, it is patent that questioning of the other three could have assisted the resolution of the disciplinary proceeding because, inasmuch as all three were eye-witnesses to the incident in question, all three had pertinent information to offer with respect to what had transpired. It may be probable that the other three officers would echo the testimony of the charging officer, Sgt. Russell. The fact that it was unlikely that the other three would tell a story different than Sgt. Russell, however, does not dilute the relevance of their testimony with respect to the transaction in question, and the petitioner was entitled to have them called as witnesses. Failure to do so was error.

■ Respondent argues, however, that, inasmuch as the weight to be accorded evidence is a matter for the discretion of the hearings officer, *see Sandlin v. OWCC,* 28 Or App 519, 523, 559 P2d 1308 (1977), the

hearings officer applied the proper standard in excluding the witnesses. This argument misses the point: the weight to be accorded evidence *once it is heard* is a matter for the hearings officer. This is not the same as a right to exclude relevant evidence, which is what the hearings officer did in this case.

## FAILURE TO POSE QUESTIONS

■        Finally, petitioner assigns as error the failure of the Disciplinary Committee to permit two questions to be posed to Sgt. Russell pursuant to OAR 291-105-061(h), which provides,

> "All questions which will assist in the resolution of the disciplinary proceeding as determined by the Hearings Officer shall be posed. The reason for not posing a question will be made part of the record."

Petitioner first requested that Sgt. Russell be asked "Why they didn't call an interpreter down here?" As respondent argues, "given petitioner's obvious command of the [English] language * * * the basis for the denial is apparent."

Petitioner also requested that Sgt. Russell be asked if he noticed "anything unusual" about petitioner's behavior. The hearings officer declined to pose the question because, he said, it called for an assumption on the witness' part which the hearings officer felt the witness was unqualified to give. We agree with the hearings officer's ruling, although we do not agree with his reason. The question, in the context of this case, was so broad as to be meaningless. Sgt. Russell had already testified with respect to some behavior on the part of the petitioner which most people might call "unusual," *viz.,* petitioner's apparent readiness to engage in a physical altercation with the staff. Under the circumstances, unless the petitioner's question was refined in such a way as to suggest that the officer was suppose to testify as to some peculiar trait or characteristic of the petitioner other than those exhibited in the incident itself, there was no reason to require the witness to answer the question.

■ ■    In summary, we hold that, under the disciplinary rules in force at the time, a petitioner may be required to choose between having an investigation conducted pursuant to OAR 291-105-058 and having witnesses presented for questioning pursuant to OAR OAR 291-105-061. The election to have witnesses questioned may, however, become in effect a request for an investigation when circumstances prevent the appearance of witnesses otherwise validly requested. All witnesses properly requested and having pertinent evidence bearing upon the validity of the charge against the petitioner shall be called upon his request and pursuant to rule, unless some reason justifying the failure to call them is made a part of the record. It is not sufficient to refuse to call a witness simply because it appears likely that that witness will repeat the testimony of a previous witness.

Affirmed in part, reversed in part and remanded.