Argued and submitted July 30, affirmed in part,
reversed in part and remanded September 29, 1980

STEVEN BEKINS,
*Petitioner,*
*v.*
OREGON STATE PENITENTIARY,
*Respondent.*

(No. 02-80-295, CA 17160)

617 P2d 653

Gary D. Babcock, Public Defender, Salem, argued the cause for petitioner. With him on the brief was Steve Dixon, Certified Law Student, Salem.

Scott McAlister, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a prison discipline case in which petitioner was charged with violation of OAR 291-105-051(6) (Rule 6), destruction of property, OAR 291-105-015(7)(a) (Rule 7(a)), possession of contraband weapons, and (c) (Rule 7(c)), possession of narcotics. Petitioner admitted possession of a hash pipe in violation of Rule 7(c). The Rule 6 charge was dismissed at the conclusion of the hearing. The petition for review in the present case is therefore limited to the finding by the Disciplinary Committee after a hearing that petitioner was in violation of Rule 7(a). Petitioner contends that the finding that he was in violation of Rule 7(a) was improper because the Disciplinary Committee refused to conduct an investigation in his case. We agree, and reverse.

In the present case, petitioner was charged with being in possession of a homemade knife which was found concealed in his mattress. The knife was discovered during a "shakedown" of the petitioner's cell at approximately 8:50 in the evening. At his hearing, the following exchange took place between the petitioner and the hearings officer:

"WILLIAMS: You say you've had this mattress for a couple of weeks?

"BEKINS: Yea. And uh, the only thing, the only two things I can think of is that it was in the mattress when I got the mattress, or that the way that the thing came down the other night it was uh, unusual and in as much as it was a holiday and apparently somebody had to uh, start the uh, somebody had to initiate the shake down [sic], somebody to take, it might have been a [sic] informer or something, and I would suggest that uh, that the Court, if that is true, that the Court check with the informer because uh, he might know more about it than I do.

"WILLIAMS: We have no information which has been submitted in evidence, Mr. Bekins, related to any information having been received from an informant. The only information we have before us for our consideration is the report of misconduct as submitted by Officer Lacy.

"BEKINS: Yea, I don't know what to do. I don't know what to say (unintelligible).
"* * * * *

"WILLIAMS: Well, we now have to recommend the disciplinary action to be taken against you and I'm asking you if you have any input into our, the nature of recommendation that we would make.

"BEKINS: Well, the only thing I can uh, tell you is that I, I haven't been having any trouble since I've been back here this time and uh, I didn't have any knife in there, I don't really, I mean that's a hell of a thing to try to explain to somebody uh, when they just come in and uh, and they actually find it and possession of 9/10 or something, of the law. But uh, I, there isn't any way I can prove that I didn't have it. I mean I don't have any, I thought that maybe somebody had, it was unusual that they'd come in and shake my cell down that late at night like that, in fact I was asleep. And uh, I don't know, I don't know what to tell you except I uh, I didn't have a knife and I, and I uh, I'm not after anybody, and I wasn't making a knife, I don't know, I don't know."

Petitioner contends that his statements, however inarticulate, constituted a sufficient request for an investigation. *See Wilkerson v. OSCI,* 24 Or App 61, 544 P2d 198 (1976).

This court has consistently held that something less than a formalized request in strict compliance with existing procedural rules was sufficient to trigger an investigation requirement if the evidence sought satisfied the limitations imposed by the rule. *Wilkerson v. OSCI, supra; Geddes v. OSP,* 26 Or App 303, 552 P2d 568 (1976). However, in each of those cases where an investigation was required, the inmate had made substantial effort toward compliance. *Wilkerson v. OSCI, supra,* (petitioner requested inmates at scene of fight be questioned); *Geddes v. OSP, supra,* (petitioner requested questioning of designated inmates and staff member); *cf. Danford v. OSP,* 32 Or App 509, 574 P2d 363 (1978) (14 specified inmates). Respondent here contends, by contrast, that petitioner merely suggested that there *might* have been an

informer who was responsible for the shakedown of his cell and, if there were such an informer, that the informer might know something about the case. Respondent argues,

"this statement falls considerably short of the request in *Downer v. OSP,* 45 Or App 1013, 609 P2d 916 (1980) in which the petitioner did not know the identity of the informant but requested an investigation of the informant's motives because of petitioner's articulated suspicion that other persons had motives to frame the petitioner. In contrast, not only does petitioner in this case make no direct request for an investigation, he also supplies no information impeaching an informant's motives if an informant exists. * * *"

We do not share respondent's difficulty in identifying a request for an investigation. Petitioner clearly asked for an investigation as to whether or not an informant existed. Obviously, until it was determined that there was an informant who was responsible for the shakedown of petitioner's cell, any further inquiry would be irrelevant. We do think, however, that petitioner's request also indicated that the informant should be questioned as to what further knowledge he had of the presence of the knife in petitioner's cell, since petitioner was insisting that he had not placed the knife in his mattress. If the petitioner did not place it there, the obvious conclusion would be that the knife was "planted" by someone else. In the context of a prison, it does not require a particularly elaborate explanation to understand why someone might attempt to create trouble for another inmate by planting such a device.

Respondent may implicitly recognize this point because, as its final argument, respondent insists that the evidence with respect to where the knife was found and the length of time petitioner had occupied the cell in question suggests that petitioner could not have been unaware of the presence of the knife and is probably responsible for it. The difficulty with respondent's argument in this regard is that it simply presents one series of permissible inferences which

could be drawn from the evidence. They are not, however, the only permissible inferences. The petitioner was entitled to have the Disciplinary Committee know whether or not an informant existed and, if he did, whether or not he had further information with respect to the manner in which the knife came to be in petitioner's mattress. We do not by this holding suggest that the answers to those questions would change the outcome of this case on rehearing. We only require that the committee obtain the information and then conduct its evaluation based on all of the evidence. *See Cruz v. OSP, (16060)* 48 Or App 473, 617 P2d 650 (1980).

Affirmed in part, reversed in part and remanded.