Argued and submitted July 30,
reversed and remanded September 29, 1980

# ABRAHAM CRUZ,
*Petitioner,*
*v.*
# OREGON STATE PENITENTIARY,
*Respondent.*

(No. 10-79-310, CA 16060)

617 P2d 650

Ernest Estes, Deputy Public Defender, argued the cause for petitioner. On the briefs were Gary D. Babcock, Public Defender, and Judith H. Stone, Certified Law Student, Salem.

Scott McAlister, Assistant Attorney General, Salem, argued the cause for respondent. With him on

the briefs were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a prison disciplinary case in which the petitioner, an inmate of the Oregon State Penitentiary, was found guilty by the Disciplinary Committee of violation of OAR 291-105-015(9), disrespect to another, which provided:[1]

"No inmate shall direct hostile, abusive or threatening language or gestures towards another person."

He seeks judicial review of the Disciplinary Committee's finding and the superintendent's ultimate approval of that finding, assigning as error three different actions by the presiding officer of the Disciplinary Committee. We agree that error was committed, and reverse.

This case arose out of a incident during the evening meal at the prison when the petitioner, after failing to receive an item of food from a steward, allegedly called the steward an obscene name.

At the disciplinary hearing on this matter, the following exchange between the petitioner and the presiding officer occurred:

"CRUZ: As I said, I only want an investigation * * *

"WILLIAMS: What do you want investigated?

"CRUZ: * * * I want to have a chance to ask Cpl. Hoover some questions in person.

"WILLIAMS: What questions do you wish to pose to Cpl.. Hoover?

"CRUZ: I want to know if he can - if he has any, anybody that heard him or heard me call Mr. Gabba a mother [epithet].

"WILLIAMS: He states that he heard that on the disciplinary report.

"CRUZ: Yes, but he doesn't have any witnesses.

"WILLIAMS: He's not required to have witnesses, Mr. Cruz.

---

[1] The rule has since been amended, and now provides,

"No inmate shall use hostile, abusive or threatening language or gestures in communicating to or about another person."

"CRUZ: I want Mr. Gabba to be here too and I want him to be asked if he heard me call him a mother [epithet].

"WILLIAMS: Mr. Gabba did not charge you with this violation, Mr. Cruz.

"CRUZ: Yes, but he's the subject of the write-up along with me.

"WILLIAMS: Mr. Gabba has not charged you - it's not Mr. Gabba who's saying that you called him a mother [epithet] - it's Cpl. Hoover.

"CRUZ: That's why I want Mr. Gabba to be here as a witness.

"WILLIAMS: I have nothing upon which to assume or make a finding that Mr. Gabba has any knowledge of this particular case.

"CRUZ: Well, I'm, I'm, I'm bringing this up for me - to Hoyt Cupp, Superintendent, to bring Mr. Gabba in here as a witness.

"WILLIAMS: What was the question you would have posed to Mr. Gabba?

"CRUZ: Whether he heard me call him a mother [epithet].

"WILLIAMS: I believe it's unnecessary to call Mr. Gabba in as a witness in this particular matter.

"CRUZ: I think this is relevant, man, because Mr. - Cpl. Hoover doesn't have any witnesses. As far as I'm concerned, Mr. Gabba would be a witness if, if it is true that I called him a mother [epithet], he should know about it.

"WILLIAMS: It states here that Mr. Gabba was walking away - there's no reason to believe that Mr. Gabba would have heard this statement being made.

"CRUZ: Well, I don't know what happened and I want him as a witness, you know, that's why I want him as a witness.

"WILLIAMS: I don't believe that calling Mr. Gabba would assist in the resolution of this particular matter.

"CRUZ: Then you're denying me my right to a fair trial.

"WILLIAMS: I am excluding Mr. Gabba as a witness.

"CRUZ: You don't have no right to exclude him.
* * *"

Petitioner asserts that the Disciplinary Committee erred in failing to investigate the accusations, failing to call witnesses, and failing to ask the question posed by petitioner.

The first matter—failure to conduct an investigation—is mooted by the fact that the only "investigation" requested by petitioner involved the calling of named witnesses. Petitioner was entitled, under these circumstances, to have the investigation *or* the witnesses; he was not entitled to both. *Cruz v. OSP,* 48 Or App 461, 617 P2d 644 (1980). By the same token, the third matter— failure to pose a question—would be mooted if the witnesses in question were called. We turn to that matter.

Petitioner first contends that Corporal Hoover should have been called. However, petitioner's request, set out *infra,* did not indicate what further evidence Corporal Hoover might possess. Petitioner merely argued, "[Hoover] doesn't have any witnesses." Absent some showing as to the evidence to be gained from calling Hoover or posing questions to him, the hearings officer did not err in refusing to do either.

■■     Petitioner next contends that Mr. Gabba, the steward, should have been called. Gabba's testimony concerning whether he heard petitioner say anything to him at the time in question would, petitioner argues, be "relevant" to determining whether or not the alleged obscene statement by petitioner was, in fact, made. *See Downer v. OSP,* 45 Or App 1013, 609 P2d 916 (1980); *Palaia v. OSP,* 41 Or App 119, 597 P2d 832 (1979).

Respondent, while apparently acknowledging that Gabba's testimony would be "relevant" under traditional tests of relevancy, nonetheless argues that the ruling of the hearings officer in the present case was correct. As we understand it, respondent is arguing that, because the most favorable thing that Gabba could say from petitioner's point of view would be that he did not hear petitioner say anything, this would

still not negate Corporal Hoover's affirmative testimony that petitioner did, in fact, make the remark in question.

This court has previously discussed relevancy as it applied to prior Corrections Division rules in cases such as *Wilkerson v. OSCI,* 24 Or App 61, 64, 544 P2d 198 (1976), *Geddes v. OSP,* 26 Or App 303, 552 P2d 568 (1976), and *Nicklin v. OSCI,* 39 Or App 833, 593 P2d 1268 (1979),and *Palia v. OSP, supra.* We dealt with the same term under the rules applicable at the time of the present case in *Downer v. OSP, supra,* but did not specifically rule on whether the old, strict relevancy test of *Palaia* still applies. We are not here called upon to answer that question because we think respondent's own formulation of the test for relevancy is sufficient to dispose of this case.

Respondent, arguing that its rule is consistent with *Downer,* states,

"In evaluating the claims of improper denial of requests for investigation, witnesses, or posing questions, respondent contends the following test should be applied:

'Taken in the light most favorable to the inmate, does the evidence offered constitute a defense to the charge or mitigate the violation?'

"If the answer is yes, the request should be allowed. If the answer is no, as in this case, the hearings officer may properly deny the request."

We accept respondent's suggested question as the appropriate one, restated as follows:

"Taken in the light most favorable to the inmate, does the evidence offered, *together with the reasonable inferences to be drawn from that evidence,* constitute a defense to the charge or mitigate the violation?"

We do not understand the emphasized material, which we have added for clarification, to change the meaning of respondent's question.

Applying this rule to the present case, one could infer from Gabba's failure to hear defendant's

alleged statement (assuming Gabba so testifies) *that the statement was not made.* The Disciplinary Committee may be highly unlikely, in view of Corporal Hoover's direct evidence, to draw that inference. But it must hear the evidence.

Reversed and remanded.