Argued and submitted December 4, 1989, reversed and remanded for a new hearing
June 20, 1990

JOHN MENDOLA,
*Petitioner,*

*v.*

PAROLE VIOLATORS' PRISON,
*Respondent.*

(03-89-002-PVP; CA A60700)

793 P2d 343

John E. Storkel, Salem, argued the cause and filed the brief for petitioner.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Yuan Xing Chen, Certified Law Student, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner, an inmate at the Oregon State Parole Violators' Prison, seeks review of an order finding him in violation of several prison disciplinary rules. He contends that the hearings officer interfered with his right, under OAR 291-105-061 and the Fourteenth Amendment Due Process Clause, to call witnesses in his defense. We reverse and remand.

The prison initiated this proceeding on misconduct reports about petitioner's transfer from the Oregon State Penitentiary to the Parole Violators' Prison. According to the reports, petitioner verbally and physically resisted the transfer; he was charged with disruptive behavior, attempted assault, attempted destruction of property, disrespect of another and disobedience of an order. OAR 291-105-015(1), (4), (6), (9), (10). Before the hearing, petitioner requested that the other inmates who were present when he was being transferred be interviewed. However, the record does not show that such an investigation was undertaken.[1]

At the hearing, petitioner denied violating any disciplinary rule and challenged the factual accounts in the misconduct reports. The following colloquy occurred between petitioner and the hearings officer during the hearing:

"[Hearings Officer]: Okay. Now, at the time of the continuation, you also requested an investigation which was ongoing at the time, but . . .

"[Petitioner]: Well, yeah, I figure if you're gonna investigate, investigate from both sides, instead of one side.

"[Hearings Officer]: Yeah, you do have that right, and I'd like to know who it is. You have a right to call witnesses, but you do have to give me a list of witnesses (unintelligible).

"[Petitioner]: Well, I don't have the list of names. You people have the transport list that was brought in on the 7th with the list of the other 25 inmates on the bus.

"[Hearings Officer]: Okay. You have not spoken with any of those inmates?

"[Petitioner]: Nope. How could I, I'm in lock down.

---

[1] Petitioner does not challenge the absence of the investigation. *See* OAR 291-105-058; *Cruz v. OSP,* 48 Or App 461, 617 P2d 644 (1980).

"[Hearings Officer]:   Well, we're not going to interview 25 witnesses. I assume you know some of them on the bus that would witness on your behalf.

"[Petitioner]:   No, I don't know none of them by name.

"[Hearings Officer]:   I see. Do you know what those witnesses if they were called what they would say, what they would state about (unintelligible)?

"[Petitioner]:   Yeah, that I was physically abused. I was brought down here against my will. I was dragged. They attempted to gag me, and all that. Okay, and I was shackled to the bus. I was put, I was put in danger on that bus.

"\* \* \* \* \*

"[Hearings Officer]:   In order, I believe you've gotten a notice of your rights in a disciplinary hearing, and in order for you to call witnesses, you have to know who they are, and you have to be able to provide a list of them to me.

"[Petitioner]:   On the, you have to, the Department of Corrections has to be able to provide me a list of names.

"[Hearings Officer]:   No.

"\* \* \* \* \*

"[Hearings Officer]:   \* \* \* Now, if we have no list of witnesses, and you are not developing a list of witnesses, we will go on with the hearing."

The hearings officer ultimately found that petitioner had violated the rules as charged.

Petitioner contends that he was precluded from exercising his right to call witnesses, because he was not provided access to a list of the other prisoners who were present at the time of the incident. He first argues that he was denied his right to call witnesses under OAR 291-105-061, which provides, in pertinent part:

"Inmates participating in a formal hearing have the right to call witnesses to testify before the Hearings Officer. Witnesses may include inmates, staff or other persons:

"(1)   If witnesses are to be called, the inmate must develop a list of witnesses and questions to be posed to each witness."

The prison's only contention is that, under this rule, petitioner had an obligation to submit a list of witnesses and that without such a list, "petitioner in effect made no request

for witnesses at all." Therefore, according to the prison, his right to call witnesses was not denied. That contention misses the point. Petitioner essentially argues that he could not develop the necessary list and thereby exercise his right to call witnesses, because the hearings officer refused to assist him in determining the names of the prisoners who were present.

A prison confinement creates impediments to a prisoner's ability to investigate and present his case in a disciplinary proceeding. Although the institution is not obligated to remove all impediments, it may not rely on the consequences of imprisonment to frustrate a prisoner's limited rights in a hearing. In this case, the hearings officer did not explain why petitioner's request would not, or could not, be accommodated. There is nothing in the record to suggest that petitioner could have developed the list from other sources or that institutional assistance would have created an undue burden or compromised the institution's safety. We conclude that, under the circumstances, the refusal to assist petitioner constituted an interference with his right to call witnesses under OAR 291-105-061.[2]

Reversed and remanded for a new hearing.

---

[2] Because we hold that petitioner's rights under the rule were violated, we need not consider his constitutional argument.