Submitted on record and briefs December 15, 1995, reversed and remanded May 29, reconsideration allowed by opinion August 28, 1996 See 143 Or App 238, 923 P2d 672 (1996)

HARVEY CARON,
*Petitioner,*

*v.*

OREGON STATE PENITENTIARY,
Corrections Department,
*Respondent.*

(6-94-16; CA A85982)

918 P2d 120

Harvey A. Caron filed the briefs *pro se.*

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Christine A. Chute, Assistant Attorney General, filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Petitioner was found guilty of violating four prison disciplinary rules: destruction of property, OAR 291-105-015(1)(b); possession of a dangerous/deadly weapon or escape device, OAR 291-105-015(4)(i); unauthorized possession of property, OAR 291-105-015(1)(g); and escape, OAR 291-105-015(4)(g). He petitions for review.[1] We reverse and remand.

The charges arose from a plot to escape from the penitentiary by sawing through window bars of the culinary department's butcher shop. The plan was revealed to a corrections officer by Taylor, one of the inmates planning the escape. Taylor implicated petitioner, who denied that he agreed to be part of the plan.

Petitioner's first assignment of error is that he was "deprived of the opportunity for a polygraph examination." The disciplinary hearing was first convened on June 1, 1994, at which time the hearings officer offered petitioner the opportunity to submit to a polygraph examination. Petitioner stated that he had no objections. The hearings officer then recessed the hearing stating that he would "make my request to have you submit to a polygraph examination, and I'll make it today." He also stated that he would ask Taylor to be scheduled for a polygraph, but that petitioner's examination was not "conditioned" on Taylor's taking the examination. The hearings officer stated:

> "We will review all the evidence is what we will do, but [the polygraph examination] will be part of this particular case, yes. That would be evidence in this particular case, and it would definitely have a bearing on the credibility of Inmate Taylor."

On August 29, the hearing continued. Petitioner indicated that he had not been given a polygraph examination. Apparently Taylor had been given an examination, which he had failed, but Taylor had not been asked questions

---

[1] The original order, dated September 22, 1994, was withdrawn in May 1995 for reconsideration of the findings of fact. The revised order upon reconsideration, dated July 11, 1995, was also withdrawn and a new revised order was issued dated August 30, 1995. The findings of fact on the two revised orders are identical and are virtually the same as on the original order.

regarding petitioner's participation in the scheme. The hearings officer, in petitioner's presence, then contacted the polygrapher to request that petitioner be given an examination. The hearings officer stated:

> "We will wait for the polygraph results, and remembering that the basis...The polygraph result will be...The purpose is to bolster your credibility. And hopefully, there will be [a second] one of Mr. Taylor so that we can see if there is some other reason to further doubt his credibility[.]"

On September 24, the hearing continued. A second polygraph examination had been given to Taylor, and he had been deemed truthful.[2] The following exchange then took place:

> "[Petitioner:]  * * * I have been here [in disciplinary segregation] for 119 days. I have asked to take a polygraph every time.
>
> "[Hearings officer (HO):]  And you have not had a...
>
> "[Petitioner:]  I have not had a polygraph. I have not been given a polygraph.
>
> "* * * * *
>
> "[HO:]  * * * [T]he polygraph hasn't been done, and the evidence against you, [petitioner] all that would happen would be by the polygraph would be something to bolster your credibility. In this particular case, there is a polygraph examination from Mr. Marvin Taylor who was brought in to question your credibility that you never discussed an escape with anybody in the Butcher Shop.
>
> "[Petitioner:]  At our last hearing, you told me Marvin Taylor failed his lie detector test.
>
> "[HO:]  And I'm telling you that he had another one, and he passed that one.
>
> "* * * * *
>
> "[HO:]  * * * [Taylor's] credibility has been bolstered by the responses by passing this particular polygraph examination, and that [has] called into question yours.

---

[2] Taylor was asked if he had talked to petitioner about escaping through the butcher shop, and Taylor had answered, "Yes."

"* * * * *

"[HO:]   * * * [T]here is also Inmate Mahon submitted to a polygraph examination and he tried to tell...He did...He told [the examiner] that you weren't involved in it.

"[Petitioner:]   Okay.

"[HO:]   He failed the question.

"[Petitioner:]   Well, you know, I don't put that much credence in your polygraphs.

"[HO:]   All right, then. Fine. * * *

"* * * * *

"[Petitioner:]   * * * [W]hy didn't I get a chance to take a polygraph, since you're basing so much on the polygraphs.

"[HO:]   We're talking about credibility, [petitioner]. And yours.

"[Petitioner:]   My credibility. Where's my polygraph?

"[HO:]   Yours is in doubt, [petitioner]. [Petitioner], you're in violation of [the rules]."

■    Petitioner acknowledges that the decision to allow a polygraph examination in relation to a prison disciplinary proceeding or to consider the results lies within the discretion of the hearings officer. ORS 421.190.[3] *Sandlin v. OWCC*, 28 Or App 519, 559 P2d 1308 (1977). He argues, however, that although it is true that the hearings officer may deny a request for a polygraph examination, "once that request [has] been granted the petitioner [is] entitled to rely upon it in preparing his defense." *Allen v. OSP*, 33 Or App 427, 432, 576 P2d 831 (1978).

Respondent counters that, under the circumstances here where petitioner indicated that he did not believe in polygraph results if they did not support his position, the hearings officer could properly conclude that scheduling a

_____

[3] ORS 421.190 provides:

"Evidence may be received at disciplinary hearings even though inadmissible under rules of evidence applicable to court procedure and the department shall establish procedures to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to afford the inmate a reasonable opportunity for a fair hearing."

polygraph for petitioner was futile. However, we do not agree. Even assuming that petitioner's disclaimer as to his belief in polygraphs accurately states his view, petitioner's personal view is not the issue. It is clear that the hearings officer did not share petitioner's opinion that the polygraph tests were of no value. From the start of the hearing, the hearings officer made it clear that petitioner's credibility was vital and that polygraph examinations would bolster petitioner's credibility. The hearings officer offered petitioner the chance to have that supporting evidence and then withdrew it. The situation here is analogous to the one in *Allen*, 33 Or App at 432, where we stated:

> "What happened here, though, is that the committee exercised its discretion in favor of petitioner and then arbitrarily and without apparent reason proceeded without the test. Petitioner had no reason to know when the hearing resumed that he would be denied the examination. While the committee could originally have denied petitioner's request, once that request had been granted the petitioner was entitled to rely upon it in preparing his defense."

Respondent contends, however, that the lack of a polygraph is not reversible error, citing *Allen*, 33 Or App at 431. There, although we concluded that the denial of the polygraph examination in itself would not have required reversal, we held that the denial, in combination with the loss of physical evidence, could have unfairly deprived the petitioner of the opportunity to present a defense. Therefore, on remand the committee was to reconsider the denial of the polygraph examination and make a record of its reasons if it again refused the test. *Id.* at 433.

We do not agree with respondent that the holding in *Allen* stands for the proposition that the denial of a polygraph examination can never constitute reversible error. In *Sandlin*, although we concluded that due process did not require the state to grant an inmate's request for a polygraph examination, we also held that the discretion authorized under ORS 421.190 to permit or deny a polygraph examination must be exercised with a view toward affording the accused inmate an opportunity for a fair hearing. 28 Or App at 524.

*Bishop v. OSP*, 35 Or App 315, 581 P2d 122 (1978), is instructive as to when the denial of the polygraph examination may be an abuse of discretion. In *Bishop*, the petitioner was charged with possession of contraband and conspiracy, in violation of disciplinary rules. We held that the denial of a polygraph examination was not an abuse of discretion when the evidence before the committee included a prison staff member's observation of the petitioner handing another inmate a folded piece of white paper that was found to contain marijuana and the torn edges of the paper containing the marijuana perfectly matched paper found in the petitioner's cell.[4]

Here, in contrast, the only direct evidence showing petitioner's involvement in the plan was the statements given by Taylor. Petitioner consistently denied that he had agreed to any plan to escape. Thus, whether petitioner was found guilty depended primarily on whether petitioner or Taylor was credible. The record shows the importance that the hearings officer placed on polygraph examinations, and that the hearings officer accepted Taylor's polygraph examination as establishing Taylor's credibility. We conclude that, under these facts, proceeding to a decision without the polygraph examination that had been offered to petitioner deprived petitioner of the opportunity for a fair hearing. Under these circumstances, the abuse of discretion requires reversal.[5]

We turn briefly to petitioner's second assignment of error, in which he argues that he was "impermissibly deprived of the opportunity for an investigation," and that the hearings officer failed to call a correctional employee as a witness. We need not decide whether there was no investigation or whether the witness should have been called and write only to clarify an issue that might arise on remand. Respondent contends that, "[i]n prison disciplinary matters, an inmate is entitled to either an investigation or witnesses

---

[4] The petitioner also was given an opportunity to contest the evidence and, on his request, a further investigation was conducted.

[5] The discretion given under ORS 421.190, to determine whether a polygraph examination is needed in order to provide petitioner with a reasonable opportunity for a fair hearing, must be exercised in the light of the circumstances existing on remand.

but not both. *Cruz v. OSP*, 48 Or App 473, 477, 617 P2d 650 (1980)." Petitioner counters that the respondent's reading of *Cruz* is too "expansive" and that, additionally, the rules considered in *Cruz* are not those now in effect. He contends that nothing in current OAR 251-105-028 restricts an inmate's right to request both witnesses and an investigation.

■■ Petitioner is correct that the current rules do not require an inmate to choose between calling witnesses or an investigation. *See* OAR 291-105-028. Additionally, the "either"/"or" choice given in *Cruz* was dictated by the facts and rules of that case. There, the petitioner's claim of a failure to conduct an investigation was

> "mooted by the fact that the only 'investigation' requested by petitioner involved the calling of named witnesses. Petitioner was entitled, *under these circumstances*, to have the investigation or the witnesses; he was not entitled to both [as discussed in] *Cruz v. OSP*, 48 Or App 461, 617 P2d 644 (1980)." *Cruz*, 48 Or App 473, 477 (original emphasis omitted; emphasis supplied).

However, we also note that, although the rules do not require an either/or choice, they also do not give an inmate an absolute right to *either* an investigation *or* witnesses, although reasons for denying those requests must be made a part of the record. OAR 291-105-028(8), (9).

Because of our disposition, petitioner's remaining assignments of error do not require discussion.

Reversed and remanded.