# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1083-16T2

IVAN MCKINNEY,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted December 6, 2018 – Decided February 28, 2019

Before Judges Whipple and DeAlmeida.

On appeal from the New Jersey Department of Corrections.

Jeffrey B. Steinfeld, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Kevin J. Dronson, Deputy Attorney General, on the brief).

PER CURIAM

Ivan McKinney, an inmate at New Jersey State Prison (NJSP), appeals from the September 28, 2016 final determination of the Department of Corrections (DOC) adjudicating him guilty of prohibited act *.005, threatening another with bodily harm or with any offense against his or her person or his or her property in violation of N.J.A.C. 10A:4-4.1(a)(2)(ii). We affirm.

I.

The following facts are derived from the record. On August 11, 2016, Senior Corrections Officer (SCO) Woods issued a written disciplinary report charging McKinney with committing prohibited act *.005. The report stated that at "0900 hrs" that day SCO Woods was escorting

> Sergeant Patterson on [a] tour of North Compound 4C at which time [inmate] McKinney, I. #601321 in cell 21 stopped Sergeant and told us if S.C.O. Early on second shift does not stop messing with his mail he will take matters into his own hands, stating S.C.O. Early will get what is coming to him.

The disciplinary report was corroborated by a special custody report prepared by Sergeant Patterson on the day of the incident. That report provides, in relevant part:

> On 8/11/16 at approximately 0900hrs, I was touring unit 4C with S.C.O. R. Woods when he was called to cell #21 housing inmate McKinney, I #601321. Inmate McKinney stated to both of us that officer Early, 2nd

A-1083-16T2

shift better stop his actions, or he is going to be dealt with.

Sergeant J. Brown conducted an investigation, during which McKinney denied threatening SCO Early. He stated that he was on the phone and "after hanging up he asked Sgt. 'Hey, what's up Sgt' when he came to [the] door and then the Sgt. started yelling 'Oh, you threatening S.[C.]O. Early.'" Sergeant Brown determined that the charges had merit and referred the matter to a Disciplinary Hearing Officer (DHO) for further action. He delivered a copy of the disciplinary report to McKinney on August 12, 2016.

The disciplinary hearing was scheduled for August 15, 2016, but was postponed to permit the DHO to obtain additional information. The hearing was again postponed on August 23, 2016, following McKinney's request for written confrontation of Sergeant Patterson and SCO Woods, and for a polygraph examination. On August 29, 2016, NJSP Administrator Steven Johnson denied McKinney's polygraph request, noting that "no issues of credibility or new evidence have been determined to warrant its approval administratively." McKinney's request for confrontation of witnesses was granted. The hearing was postponed on August 30, 2016, and August 31, 2016, to permit witnesses to answer McKinney's written confrontation questions.

A-1083-16T2

The hearing was held on September 1, 2016. McKinney pled not guilty to the charge. He was assisted by counsel substitute. At the hearing, McKinney denied making the comments alleged in the disciplinary report. In addition, his counsel substitute argued that McKinney was on the telephone at the time of the alleged incident and that it was "unlikely that he said anything to anybody." He also argued that the officers' reports were inconsistent with respect to the alleged remarks, and that the remarks, if made by McKinney, did not constitute a threat.

An attorney, Jeffrey B. Steinfeld, submitted an affidavit stating that on August 11, 2016, McKinney called his office at "approximately 8:47 a[.]m.," and that he "remained on the telephone with him until almost 9:00 a[.]m., at which time, he advised me that he had to call his mother and was ending the phone call." An August 11, 2016 letter from Steinfeld to the NJSP Administrator, however, contradicts his affidavit. In the letter, Steinfeld states:

> [a]t approximately 8:52 a[.]m[.], shortly after Mr. McKinney had been speaking with me on the telephone, Sergeant Pat[t]erson and Officer Woods came to his cell. Sergeant Pat[t]erson said to Mr. McKinney, "Oh, you threatening Early?" My client immediately and forcefully denied ever having threatened any officer, including Officer Early. Sergeant Pat[t]erson and Officer Woods then left my client.

4

Prison records reviewed by the DHO show that McKinney was not continually on the telephone with Steinfeld during the period described in the attorney's affidavit. The records indicate the following calls:

> 8:33 a.m.: Call to McKinney's attorney lasted approximately 15 minutes (8:48 a.m.).
>
> 8:49 a.m.: Call to McKinney's attorney lasted approximately 1 minute (8:50 a.m.).
>
> 8:56 a.m.: Call to McKinney's attorney lasted approximately two minutes (8:58 a.m.).

There was an approximately one-minute gap from 8:48 a.m. to 8:49 a.m., and an approximately six-minute gap from 8:50 a.m. to 8:56 a.m., during which McKinney was not on the telephone with his counsel. It appears from Steinfeld's letter that it was during the six-minute gap, i.e. "[a]t approximately 8:52 a.m., shortly after Mr. McKinney had been speaking with me on the telephone," that the officers encountered McKinney.

At 8:58 a.m., McKinney started an approximately three-minute telephone call with his mother. Unlike his calls with counsel, McKinney's call with his mother was recorded. The DHO reviewed the recording of the call, which the hearing officer described as "a routine conversation" about family matters until

> [a]t the end of the telephone call, [inmate] is heard by DHO saying, 'Ma they coming to lock me up. They lying right now. They said that . . . Call down here to

5

the warden cause they walked by. The sergeant and officer said something about I threatened somebody. I just told Jeff on the phone. Call him right now and tell him to call the warden. They come to lock me up. They lying on me. Tell him to call the warden.

It is clear from the transcript that the event in question took place prior to McKinney's telephone call with his mother because McKinney admits that he previously discussed the incident with "Jeff," presumably his counsel, "on the phone," likely during the approximately two-minute call starting at 8:56, just before McKinney called his mother. In addition, at the time that McKinney was on the telephone with his mother he was aware of the nature of the charges.

The DHO reviewed an August 23, 2016 special custody report of Sergeant Patterson, stating that he did not see McKinney on the telephone on the date in question, as well as an August 26, 2016 special custody report of SCO Woods stating that during the incident at "no time was" McKinney on the phone.

After hearing the testimony, reviewing the evidence, and considering McKinney's arguments, the DHO found McKinney guilty of the *.005 charge. In a written decision, the hearing officer concluded

> [r]eports state [inmate] made a threatening statement to custody staff about an officer on another shift. [Inmate] denied guilt & stated he did not threaten the officer & could not have done so because he was on the telephone at the time the comments were said to have been made by him. DHO notes that the statement could have been

6

> made by the [inmate] between telephone calls or thereafter. DHO also notes that the time on the disciplinary report is the time that the [inmate] was being placed on P[re] H[earing] D[etention] status. The incident would have occurred earlier th[a]n 9:00 a[.]m[.] [S]taff reports & audio evidence are relied upon to determine guilt.

The DHO also noted that "the attorney's timeline of his telephone call with the [inmate] in his affidavit does not match the NJSP/DHO's timeline of the calls . . . ."

McKinney was sanctioned to 180 days in administrative segregation, a 365-day loss of commutation time, and a thirty-day loss of recreational privileges. The DHO noted the serious nature of the offense, and the need to deter other inmates as reasons for the sanctions imposed. On appeal, an Associate Administrator upheld the hearing officer's decision and the sanctions imposed. This appeal followed.

On appeal, McKinney argues: (1) the DOC's final agency decision is contrary to the evidence adduced at the disciplinary hearing; (2) the comments attributed to McKinney did not constitute a threat of harm to SCO Early's person

A-1083-16T2

or property; (3) the DOC wrongfully denied McKinney's request for a polygraph examination; and (4) the sanctions imposed are excessive.[1]

## II.

Our review of a final agency decision is limited. Reversal is appropriate only when the agency's decision is arbitrary, capricious, or unreasonable, or unsupported by substantial credible evidence in the record as a whole. Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980); see also In re Taylor, 158 N.J. 644, 657 (1999) (holding that a court must uphold an agency's findings, even if it would have reached a different result, so long as sufficient credible evidence in the record exists to support the agency's conclusions). "[A]lthough the determination of an administrative agency is entitled to deference, our appellate obligation requires more than a perfunctory review." Figueroa v. N.J. Dep't of

---

[1] McKinney also argues that we should suppress the DOC's merits brief due to the agency's ten-month delay in filing a statement of items comprising the record on appeal (SOI). See R. 2:5-4(b). McKinney argues that the delay deprived him of due process, and allowed "a blot upon his good name" to remain in the DOC's records. The DOC does not address this argument in its merits brief. While we do not condone the lengthy delay in the submission of the SOI, we note that McKinney's counsel did not file his merits brief until April 27, 2018, approximately seven months after the SOI was filed. In addition, given the court's decision, McKinney did not suffer unwarranted sanctions while his appeal was pending. Finally, we question the strength of counsel's argument that the delay in the filing of the SOI affected the "good name" of McKinney, who is serving a life sentence for the kidnapping and sexual assault of a minor, one of a long list of convictions he has accumulated over many years.

Corr., 414 N.J. Super. 186, 191 (App. Div. 2010) (quoting Blackwell v. Dep't of Corr., 348 N.J. Super. 117, 123 (App. Div. 2002)).

"A finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act." N.J.A.C. 10A:4-9.15(a). "Substantial evidence" is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)). In other words, it is "evidence furnishing a reasonable basis for the agency's action." Figueroa, 414 N.J. Super. at 192 (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 562 (2002)).

Having carefully reviewed the record, we are satisfied that the DOC's decision is supported by substantial credible evidence. As noted in detail above, despite McKinney's insistence that he could not have threatened SCO Early on the date in question because he was on the telephone with his attorney and mother, the record quite plainly establishes that McKinney had ample opportunity to commit the offense of which he was adjudicated guilty.

McKinney made four telephone calls on the morning of August 11, 2016, all before 9:00 a.m. There were breaks between the calls, including a six-minute period from 8:50 to 8:56, during which McKinney was not on the telephone. In

9

a letter written to the NJSP Administrator on the day of the offense, McKinney's counsel admitted that as of 8:52 a.m. he had completed his phone call with McKinney, and that officers approached McKinney at that time. McKinney did not call his attorney again until 8:56. Four minutes is more than sufficient time for McKinney to call out to passing officers and make the threatening remarks attributed to him.

We are not persuaded by McKinney's argument that the agency's decision cannot be upheld because the officers' reports allege he made a threat at 9:00 a.m., when DOC records establish he was on the telephone with his mother at that time. We note that Sergeant Patterson's report indicates that McKinney made the threat at "approximately 9:00hrs," and that SCO Woods may well have been estimating the time that the threat was made during the break in telephone calls between approximately 8:50 a.m. and 8:56 a.m. In the prison setting, where officers face a number of threats and distractions, particularly when they are in an inmate housing area, as was the case here, we cannot reasonably expect absolute precision in the handwritten recording of the timing of events.

We also have considered, and reject, McKinney's argument that he was improperly denied the opportunity to take a polygraph examination. An inmate is not accorded the full panoply of rights in a disciplinary proceeding afforded

10

a defendant in a criminal prosecution. Avant v. Clifford, 67 N.J. 496, 522 (1975). Instead, prisoners are entitled to: written notice of the charges at least twenty-four hours prior to the hearing; an impartial tribunal; a limited right to call witnesses and present documentary evidence; a limited right to confront and cross-examine adverse witnesses; a right to a written statement of the evidence relied upon and the reasons for the sanctions imposed; and, where the charges are complex, the assistance of a counsel substitute. Id. at 525-33; accord Jacobs v. Stephens, 139 N.J. 212 (1995); McDonald v. Pinchak, 139 N.J. 188 (1995). We are satisfied McKinney received all due process protections to which he is entitled.

An inmate does not have the right to a polygraph test to contest a disciplinary charge. Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79, 83 (App. Div. 1997). "An inmate's request for a polygraph examination shall not be sufficient cause for granting the request." N.J.A.C. 10A:3-7.1(c). In fact, N.J.A.C. 10A:3-7.1(c) "is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a disciplinary charge against him." Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23-24 (App. Div. 2005). A "prison administrator's determination not to give a prisoner a polygraph examination is discretionary and may be

11

reversed only when that determination is 'arbitrary, capricious or unreasonable.'" Id. at 24. "[A]n inmate's right to a polygraph is conditional and the request should be granted when there is a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary process." Id. at 20.

> Impairment [of fundamental fairness] may be evidenced by inconsistencies in the SCO's statements or some other extrinsic evidence involving credibility, whether documentary or testimonial, such as a statement by another inmate or staff member on the inmate's behalf. Conversely, fundamental fairness will not be effected when there is sufficient corroborating evidence presented to negate any serious question of credibility.
>
> [Id. at 24.]

Here, McKinney's threat was witnessed by two officers. No witness came forward disputing the officers' version of events. Prison records and an admission by McKinney's counsel established that McKinney had ample time to make a threat between phone calls. As a result, we agree with the Administrator's determination that McKinney "failed to demonstrate that the denial of his request for a polygraph negated the fundamental fairness of the disciplinary proceeding which would compel the granting of his request for a

A-1083-16T2

polygraph." <u>Id.</u> at 26. We are satisfied the Administrator did not abuse his discretion by denying the request for a polygraph examination.

We have reviewed McKinney's remaining arguments and conclude they lack sufficient merit to warrant extended discussion. The comments attributed to McKinney quite plainly constitute a threat of harm to SCO Early's person or property. When a prison inmate promises to "take matters into [his] own hands" and give a corrections officer "what is coming to him," only one meaning obtains: the inmate is threatening harm. We find the sanctions imposed on McKinney, which fall within the range permitted by N.J.A.C. 10A:4-4.1(a)(2), to be apt, given the serious nature of the offense. Protecting the security of corrections officers and maintaining the orderly operation of the prison are paramount concerns warranting serious sanctions when endangered by threats of harm from inmates.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1083-16T2