**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4702-17T3

MICHAEL TORRISI,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

Argued telephonically July 9, 2019 - Decided July 15, 2019

Before Judges Yannotti and Haas.

On appeal from the New Jersey Department of Corrections.

Michael Torrisi, appellant, argued the cause pro se.

Tasha M. Bradt, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Tasha M. Bradt, on the brief).

PER CURIAM

Appellant Michael Torrisi, an inmate presently confined at South Woods State Prison, appeals from a final decision of the New Jersey Department of Corrections (NJDOC), which upheld the decision of a hearing officer, who found appellant guilty of several disciplinary infractions and imposed sanctions. We affirm.

This appeal arises from the following facts. On January 31, 2018, Senior Corrections Officer (SCO) Jonal Lucien was working on 5 Tier in 3 Wing at East Jersey State Prison (EJSP). Lucien reported that he approached appellant's cell in order to conduct a random, routine search, pursuant to "post orders." Lucien ordered appellant to leave the cell, and appellant told him, "Fuck you and fuck your mother."

According to Lucien, appellant swung at him with a closed fist and made contact with the officer's left cheek. Lucien said he wrestled with appellant and struck him with "multiple closed fists" to defend himself and gain control of the inmate. Lucien reported that appellant continued to swing his arms violently and remained combative. A "code 33" was called and other correction officers responded to the scene to assist in restraining appellant. A "code 33" alerts

2

NJDOC staff of an emergency within the prison, and signals that additional staff is required to respond to the emergency.

SCO Matthew Kruk reported that on January 31, 2018, he witnessed appellant assaulting Lucien. In his report, Kruk stated that after the code 33 was called, he secured his tier and went to 5 tier to assist the other officers restrain appellant. According to Kruk, appellant was still being combative and he continued to refuse to comply with multiple commands that he stop resisting. Kruk assisted the other officers in placing handcuffs on appellant.

SCO Eric Llerena also filed a report concerning the incident. In his report, Llerena stated that on January 31, 2018, he witnessed appellant assaulting Lucien near the fence on 5 tier in 3 wing. A code 33 was called. Llerena responded to the scene and assisted Lucien restrain and gain control of appellant, whom Llerena described as "combative."

According to Llerena, appellant refused to comply with orders that he cease resisting. Llerena reported that appellant continued to strike at the officers with his hands and feet. Llerena said he struck appellant several times with a closed fist "in an attempt to gain compliance." Other officers arrived and were able to gain control of appellant. The officers placed appellant in handcuffs and escorted him off the unit for a medical evaluation.

A-4702-17T3

Medical staff treated appellant for swelling and contusion on the right side of his face, eye, and cheek. He was cleared for placement in an isolation cell in the infirmary. NJDOC staff thereafter searched appellant for contraband, but none was found. He was later transported to a medical center for treatment.

The NJDOC charged appellant with the following prohibited acts under N.J.A.C. 10A:4-4.1: *.002, assaulting any person; .256, refusing to obey an order of any staff member; .304, using abusive or obscene language to a staff member; and *.306, conduct that disrupts or interferes with the security or orderly running of the correctional facility.[1] The charges were investigated, found to have merit, and referred to a hearing officer for further proceedings.

The hearing commenced on February 2, 2018, but the hearing officer postponed the proceeding several times: to obtain appellant's psychological evaluation; to consider appellant's requests for additional information and a polygraph examination; to respond to appellant's request for witness statements; and to allow appellant an opportunity for confrontation of eight correction officers who were involved in the incident. Appellant pled not guilty to all

---

[1] "Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions[.]" N.J.A.C. 10A:4-4.1(a).

charges and requested the assistance of counsel substitute, which the hearing officer granted.

The record shows that although appellant asked the NJDOC to obtain witness statements from inmates assigned to cells 230 to 250 in 3 wing, those inmates did not provide statements because they were not present when the incident occurred. In addition, the administrator of EJSP denied appellant's request for a polygraph examination, finding that any issue of credibility could be addressed in the confrontation of the officers involved, without compromising the fairness of the proceeding.

The hearing officer permitted appellant and his counsel substitute to submit written questions for eight officers. The hearing officer posed the questions to the officers, the officers responded verbally, and the hearing officer recorded the officers' responses.

The hearing officer found appellant guilty of the charges. The hearing officer combined the *.002 charge (assault) and the *.306 charge (conduct that disrupts), and imposed the following sanctions: 365 days of administrative segregation; the loss of 365 days of computation time, the loss of thirty days of recreational privileges, and the loss of fifteen days of telephone privileges.

For the .256 charge (refusing to obey an order of a staff member), the hearing officer imposed the following sanctions: the loss of sixty days of computation time and the loss of twenty days of recreational privileges. The hearing officer suspended these sanctions for sixty days. In addition, for the .304 charge (using obscene or abusive language with a staff member), the hearing officer imposed the loss of sixty days of computation time and the loss of ten days of radio/television privileges.

Appellant filed an administrative appeal to the administrator of EJSP, and requested that the sanctions be set aside. In his appeal, appellant stated that he was assaulted because he had "an exchange of words" with the unit officer. He asserted that he "should not be punished for being assaulted." On March 13, 2018, the administrator issued his decision on the appeal, finding that the hearing officer did not misinterpret the facts and the sanctions imposed are appropriate. The administrator also denied appellant's request for leniency. This appeal followed.

On appeal, appellant argues: (1) the hearing officer's decision was based on hearsay, not facts; (2) in the hearing, the hearing officer made a biased statement; (3) the NJDOC improperly denied his request for a polygraph examination and did not provide a videotape of the incident; and (4) SCO Lucien

did not provide any medical report, pictures, or actual evidence to support his allegations.

Judicial review of final decisions of an administrative agency is "severely limited."  George Harms Constr. Co. v. N.J. Turnpike Auth., 137 N.J. 8, 27 (1994) (citing Gloucester Cty. Welfare Bd. v. N.J. Civil Serv. Comm'n, 93 N.J. 384, 390 (1983)).  This court can "intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy."  Ibid.

Where, as here, the court reviews a final decision of the NJDOC in an inmate disciplinary matter, the court considers whether there is substantial evidence in the record to support the NJDOC's decision that the inmate committed the prohibited act and whether, in making that decision, the agency followed the regulations governing the disciplinary process, which were adopted to afford the inmates procedural due process.  See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995); Jacobs v. Stephens, 139 N.J. 212, 220-22 (1995).

As noted, appellant argues that the hearing officer's decision is based on hearsay, not facts, and SCO Lucien failed to substantiate his incident report with a medical report, pictures, or actual evidence.  We are convinced, however, that

there is sufficient credible evidence in the record to support the NJDOC's final decision.

The record shows that the hearing officer relied upon the officers' written reports, which stated that appellant assaulted SCO Lucien, refused to follow orders, yelled profanities at the officers, and engaged in conduct resulting in a code 33 that disrupted the operation of the facility. In reaching that decision, the hearing officer considered, among other evidence, the officers' answers to the confrontation questions that appellant and his counsel substitute submitted. The evidence presented was sufficient to support the NJDOC's finding that appellant was guilty of engaging in the prohibited acts for which he was charged.

Appellant argues, however, that he was denied due process because the agency denied his application for a polygraph examination. N.J.A.C. 10A:3-7.1(a) states that the prison administrator or the administrator's designee may request a polygraph examination:

> 1. When there are issues of credibility regarding serious incidents or allegations which may result in a disciplinary charge; or
>
> 2. As part of a reinvestigation of a disciplinary charge, when the Administrator or designee is presented with new evidence or finds serious issues of credibility.

A-4702-17T3

"An inmate's request for a polygraph examination shall not be sufficient cause for granting the request." N.J.A.C. 10A:3-7.1(c). See also Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79, 83 (App. Div. 1997) (noting that under the applicable regulation, an inmate "does not have the right to a polygraph test").

The court has observed that N.J.A.C. 10A:3-7.1 "is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a disciplinary charge against him." Ramirez v. N.J. Dep't of Corr., 382 N.J. Super. 18, 23-24 (App. Div. 2005). The administrator must, however, consider whether denial of the request will impair the fundamental fairness of the disciplinary proceeding. Id. at 24.

> Impairment may be evidenced by inconsistencies in the SCO's statements or some other extrinsic evidence involving credibility, whether documentary or testimonial, such as a statement by another inmate or staff member on the inmate's behalf. Conversely, fundamental fairness will not be [a]ffected when there is sufficient corroborating evidence presented to negate any serious question of credibility.
>
> [Ibid.]

Furthermore, the decision of whether to grant an inmate's request for a polygraph is committed to the sound discretion of the administrator or the administrator's designee, and we will reverse that determination only if shown to be arbitrary, capricious, or unreasonable. Ibid.

9

Here, the administrator found that a polygraph examination was not warranted because there were no significant issues of credibility regarding the subject disciplinary charges. As noted previously, the charges were based on the reports of several officers, who described the incident consistently and confirmed that appellant assaulted SCO Lucien, failed to comply with the officers' orders, used abusive or obscene language in addressing staff members, and engaged in conduct that disrupted the facility.

Although appellant disputed the SCOs' accounts of the incident, the administrator found that any issues of credibility could be addressed during the officers' confrontation. The record shows that appellant and his counsel substitute provided written confrontation questions for eight corrections officers who were involved in the incident. The administrator's decision to deny appellant's request for a polygraph is supported by the record and not arbitrary, capricious or unreasonable.

Appellant also argues that the hearing officer erred by crediting the statements of the officers. Appellant contends SCO Lucien failed to substantiate his report with photos of the officer's injuries or "actual proof" the incident happened as he reported. Appellant asserts he was not combative, as shown by the fact that the officers did not use mace to control him. He also states that the

agency failed to present a video recording of the incident because the video would have shown that he was not guilty. We are convinced these arguments are entirely without merit.

Here, the hearing officer relied upon the reports submitted by the officers, which supported the conclusion that appellant refused to follow the officers' orders, yelled profanities at staff members, assaulted Lucien, and disrupted the operations of the facility. Appellant was afforded the opportunity to confront eight officers who were involved in the incident, by submitting written questions.

The hearing officer considered the officers' responses to the questions and noted that they were consistent. Moreover, Lucien's statement that he was injured in the incident was substantiated by the NJDOC's "Use of Force Report," which states that Lucien's hand was "swollen and painful."

Appellant further argues that the hearing officer was biased. He claims the hearing officer stated that Lucien did not have any marks "because of his skin color." There is, however, no support in the record for this claim, and the record shows that Lucien received medical attention for the injuries he sustained in the incident.

A-4702-17T3

Appellant also claims the incident occurred in an area of the prison where cameras are present. He asserts that the NJDOC failed to present the hearing officer with a video recording of the incident because the recording purportedly shows that he was not guilty of the charges. There is, however, nothing in the record which indicates the incident was recorded. Moreover, the other evidence was sufficient to support the charges.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4702-17T3