887 A.2d 698

WILSON RAMIREZ, APPELLANT, v. DEPARTMENT
OF CORRECTIONS, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted November 7, 2005—Decided December 19, 2005.

Before Judges CUFF, PARRILLO and HOLSTON, JR.

Wilson Ramirez, appellant pro se.

*Peter C. Harvey,* Attorney General, attorney for respondent (*Jean Reilly,* Deputy Attorney General, of counsel; *Christopher C. Josephson,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

HOLSTON, JR., J.A.D.

This prison disciplinary appeal requires us to examine when an administrator should grant an inmate's request for a polygraph examination. We hold that an inmate's right to a polygraph is conditional and the request should be granted when there is a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary process.

Wilson Ramirez, an inmate currently incarcerated at East Jersey State Prison, appeals the final agency decision of the Department of Corrections (DOC) upholding the decision of the hearing officer finding Ramirez guilty and imposing disciplinary sanctions for committing prohibited acts \*.803/\*.002, attempting to commit an assault on any person in violation of *N.J.A.C.* 10A:4–4.1(a). Ramirez was found guilty of the offense and the sanction of fifteen days detention (with credit for time served), 180 days administra-

tive segregation, and ninety days loss of commutation time was imposed.

On January 12, 2005 at approximately 9:00 a.m., Ramirez was sent back from the gym at Bayside State Prison (BSP) for failure to comply with a "written rule or regulation of the correction facility," i.e., having his "ID under his coat." This is known as "on the spot discipline." He was told to report to the housing area. As he was walking to the East Arcade "frisk shack," Ramirez was overheard by Senior Corrections Officer (SCO) Robinson to say, "this is bullshit, these fucking cracker police around here have something coming to them." When SCO Robinson questioned Ramirez about the statement, Ramirez replied, "that's right, I said it, you motherfuckers have something coming." SCO Robinson then ordered Ramirez to turn around and place his hands on the wall. According to SCO Robinson, Ramirez responded to the order by stating, "fuck you," and then came at him with clenched fists. SCO Robinson and SCO Koerner attempted to restrain him, Ramirez resisted, and when ultimately restrained, Ramirez was placed in handcuffs and thereafter charged. Ramirez denied the charge and contended that he did not assault SCO Robinson but had himself been assaulted by the officer.

Ramirez contends that his due process rights were violated during the DOC disciplinary proceedings because (1) he was denied the right to present documentary evidence that would have been exculpatory, namely a videotape of the "frisk shack," and (2) the prison administrator denied his request for a polygraph examination, even though credibility was an issue since the veracity of the charge was his word against that of two officers. Lastly, Ramirez asserts that the hearing officer's decision lacked substantial credible evidence because the decision failed to disclose why the "frisk shack" video was not investigated and why Ramirez was denied polygraph testing.

Ramirez' contention that he was denied his due process right to present documentary evidence lacks merit. The limited due process rights to which inmates of our prisons who are

charged with disciplinary infractions are entitled were enumerated by our Supreme Court in *Avant v. Clifford,* 67 *N.J.* 496, 525–30, 341 *A.*2d 629 (1975). Among the rights granted by *Avant* is the limited right to "present documentary evidence in their defense when such procedure will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 529, 341 *A.*2d 629.

Ramirez contends that a video of the "frisk shack" would show that not only did he not assault SCO Robinson but that he was assaulted by SCO Robinson. We are satisfied that, if there were a videotape of the "frisk shack," the videotape would constitute the type of documentary evidence that *Avant* indicates an inmate charged with a disciplinary infraction would be entitled to present in his defense. The record, however, confirms that the hearing officer required that the existence of a videotape of the "frisk shack" be investigated and that the hearing officer intended to review it, if a tape had existed. The investigation, however, revealed that the "frisk shack" is not under "video camera watch."

The initial hearing was held on January 14, 2005, but was postponed to determine whether video of the incident existed. A handwritten note dated January 14, 2005 from Hearing Officer Shepperd to Sgt. Chavik reads, "Ramirez states there was a video camera in the frisk area and that this incident is on tape. Check with BSP to see if a videotape of this incident. If there is one, we need to view it." A note on BSP stationary dated January 14, 2005 from Sgt. Kenney to the hearing officer in reply to the hearing officer's inquiry states, "The frisk shack located in the East Arcade area is not under videocamera watch. This incident (*.803/*.002) was not videotaped. The escort of inmate Ramirez from the holding cell to the transport vehicle in BSP's intake area was done on camera by SID." We are satisfied that Ramirez' due process right to present documentary evidence was fully protected by the hearing officer's efforts to accommodate Ramirez' request for what was determined to be a non-existent videotape of the incident.

 We also disagree with Ramirez' second contention that his due process rights were denied when his request for a polygraph examination was denied. On January 18 and 19, 2005, the disciplinary hearing was postponed a second and third time because of Ramirez' request for a polygraph.

The right to a polygraph is a limited right provided by *N.J.A.C.* 10A:3–7.1(a). Associate Bayside Administrator Greg Bartkowski denied Ramirez' request for a polygraph by memorandum dated January 19, 2005. Bartkowski stated, "Be advised that I have reviewed your disciplinary charge and related materials. There is no issue of credibility that can't be determined by the Hearing Officer during the disciplinary process. In review of the foregoing, your request for a polygraph is not approved."

 An appellate court ordinarily will reverse the decision of an administrative agency only when the agency's decision is "arbitrary, capricious or unreasonable or [ ] is not supported by substantial credible evidence in the record as a whole." *Henry v. Rahway State Prison*, 81 *N.J.* 571, 579–80, 410 *A.2d* 686 (1980).

*N.J.A.C.* 10A:3–7.1, Use of polygraph examinations with inmates, reads in applicable part:

(a) A polygraph examination may be requested by the Administrator:

1. When there are issues of credibility regarding serious incidents or allegations which may result in a disciplinary charge....

The code regulation's principal impetus is as an investigative tool of the administrator when serious disciplinary infractions are alleged against an inmate as opposed to an affirmative right granted to the inmate himself.

In *Johnson v. New Jersey Department of Corrections*, 298 *N.J.Super.* 79, 83, 688 *A.2d* 1123 (App.Div.1997), we determined that an inmate does not have an unqualified right to a polygraph test. Under *N.J.A.C.* 10A:3–7.1(c), "[a]n inmate's request for a polygraph examination shall not be sufficient cause for granting the request." This administrative code section is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a

disciplinary charge against him. Therefore, we conclude that a prison administrator's determination not to give a prisoner a polygraph examination is discretionary and may be reversed only when that determination is "arbitrary, capricious or unreasonable."

Although no appellate tribunal in this state has directly addressed this issue, we are convinced by an analysis of the authorities below that a prison administrator's discretion must be guided by whether the request for a polygraph if denied will impair the fundamental fairness of the disciplinary proceeding. Impairment may be evidenced by inconsistencies in the SCO's statements or some other extrinsic evidence involving credibility, whether documentary or testimonial, such as a statement by another inmate or staff member on the inmate's behalf. Conversely, fundamental fairness will not be effected when there is sufficient corroborating evidence presented to negate any serious question of credibility.

In *Engel v. New Jersey Department of Corrections*, 270 *N.J.Super.* 176, 178, 636 *A*.2d 1058 (App.Div.1994), a prisoner was denied his request for a polygraph examination to strengthen his credibility against a single confidential informant's claim that the prisoner was planning to escape the prison facility. Unable to find a single objective shred of corroboration for the informant's statements, we found that the prison administrator's failure to recognize the serious issue of credibility between the two parties required the grant of the inmate's request for a polygraph as a matter of fairness. The failure to do so was an unsustainable exercise of his discretion under *N.J.A.C.* 10A:3–7.1, pursuant to *N.J.A.C.* 10A:4–11.4(d). We further determined that considerations of minimal due process required the granting of Engel's request for a polygraph test. *Id.* at 180, 636 *A*.2d 1058.

Cases from other jurisdictions support our conclusion that a prisoner has no unqualified due process right to a polygraph examination upon every request. In *Losee v. Iowa*, 374 *N.W.*2d 402, 404 (Iowa 1985), the Iowa Supreme Court found that "a requirement that [polygraph examinations] must be given upon

request of each person charged with a violation of prison rules could well be unreasonably burdensome and subject to manipulation by inmates." The Oregon Court of Appeals has also found that due process does not require the State to grant inmates' requests for a polygraph examination if time and expense do not permit. *See Bishop v. Oregon State Penitentiary, Corr. Div.,* 35 *Or.App.* 315, 581 *P.*2d 122, 124 (1978).

While we are satisfied that no absolute right to the examination exists, we concur with cases from other jurisdictions that hold that when an inmate's request for a polygraph examination is denied, the "fundamental fairness" of the proceeding must be considered. In *United States ex. rel. Wilson v. DeRobertis,* 508 *F.Supp.* 360, 362 (N.D.Ill.1981), the District Court of Northern Illinois found that a prison administrator's denial of a polygraph examination did not harm the "fundamental fairness" of the proceeding since a complete investigation was conducted, resulting in outside evidence corroborating the Committee's findings. In contrast, the Oregon Court of Appeals held in *Caron v. Oregon State Penitentiary,* 141 *Or.App.* 347, 918 *P.*2d 120, 123, *modified,* 143 *Or.App.* 238, 923 *P.*2d 672 (1996) that a prison administrator's denial of a polygraph exam when no corroborating evidence existed impaired the fairness of the proceeding, constituting a material error in procedure by the hearing officer. The court remanded the matter for further agency action, since the only evidence against the prisoner was another inmate's uncorroborated accusations. *Ibid.*

On the other hand, *Bishop* recognized that a polygraph examination is not required when corroborating evidence does exist. In *Bishop,* the court held that a denial of a polygraph examination was not an abuse of discretion because the evidence before the committee included a prison staff member's observation of the prisoner possessing marijuana, which was further corroborated by evidence of the paper used to hold the marijuana found in the prisoner's cell. *Bishop, supra,* 581 *P.*2d at 124.

In this case, Ramirez chose not to testify and did not request any witnesses on his behalf. The only evidence before the hearing

officer was the report of SCO Robinson, the officer who charged Ramirez with the offense, and the witness to the offense, SCO Koerner. Thus, similar to *Bishop* and unlike *Engel*, corroborating evidence existed, namely SCO Koerner's eye-witness account of Ramirez' actions. Furthermore, Ramirez failed to show any inconsistencies in the evidence presented or in the investigative reports.

Because no inconsistencies regarding SCO Robinson's accusation or other extrinsic evidence involving credibility were presented, save Ramirez' denial, and since corroborating evidence was presented to confirm SCO Robinson's credibility, Ramirez has failed to demonstrate that the denial of his request for a polygraph negated the fundamental fairness of the disciplinary proceeding which would compel the granting of his request for a polygraph. We are satisfied that the associate administrator properly exercised his discretion based on the evidence before him and that Ramirez' due process rights were not violated.

■ Finally, we are satisfied that the hearing officer's decision finding Ramirez guilty of the disciplinary offense charged was based on substantial evidence in the record. On January 24, 2005, the hearing resumed. Ramirez pled not guilty to the charge but did not make a statement. His counsel substitute stated on his behalf: "[Ramirez] didn't do this. He [Ramirez] didn't want to go to Bayside State Prison cause he didn't want to get in trouble. He was assaulted."

The hearing officer, before rendering his findings, reviewed the following documentary evidence: Escort Special by C. Ciavrell; CMS Memo concerning SCO Robinson; CMS Memo concerning Ramirez; Lock up Note; Memo from SCO Koerner; Escort Special by L. Veach; Memo by Sgt. Kenney; Preliminary Incident Report; Authorization for Pre–Hearing Detention; On-the-spot Disciplinary Report/Adjudication; Request for Polygraph; Hearing Officer Sheppard's Request for existence of Video; and Request for Polygraph Decision.

The January 24, 2005 adjudication of disciplinary charge states: "Ramirez is charged with attempting to assault the officer. He denies guilt. The officer's report is supported by the witness SCO Koerner (A-4). The inmate may have been upset about OTSC that he had just been issued. There is substantial evidence of guilt."

We are satisfied that the record clearly establishes that Ramirez received the due process granted him by *Avant* by the hearing officer's attempt to secure the videotape requested. It is clear that adjournments were granted in order to determine whether a videotape was available and whether Ramirez' request for a polygraph would be granted. The associate administrator's denial of Ramirez' request for a polygraph was not an abuse of discretion because the absence of a polygraph did not impede the fundamental fairness of the disciplinary hearing. Lastly, there was substantial evidence in the record supporting the DOC's affirmance of the hearing officer's finding of guilt. Accordingly, the decision of the DOC upholding the hearing officer's decision is affirmed.

Affirmed.