NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1941-15T3

PHILLIP A. DIXON,

 Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

 Respondent.
__________________________

 Submitted July 6, 2017 – Decided July 19, 2017

 Before Judges Yannotti and Haas.

 On appeal from the New Jersey Department of
 Corrections.

 Phillip A. Dixon, appellant pro se.

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Lisa A. Puglisi,
 Assistant Attorney General, of counsel; Randy
 Miller, Deputy Attorney General, on the
 brief).

PER CURIAM

 Appellant Phillip Dixon, an inmate currently in the custody

of the Department of Corrections (DOC), appeals from the DOC's

final administrative decisions adjudicating him guilty of
institutional infractions .254, refusing to accept a housing unit

assignment, and *.803/*.306,1 attempting to disrupt or interfere

with the security or orderly running of the correctional facility.

N.J.A.C. 10A:4-4.1(a). We affirm.

 On September 13, 2015, Senior Corrections Officer Barrett

ordered Dixon to pack up his belongings and move to a different

cell. Dixon refused to comply with this order and stated, "I'm

not going to double lock,[2] send me to lock-up." Dixon was charged

with refusing to accept a housing unit assignment and placed in

prehearing detention. After a sergeant investigated the incident,

the matter was referred to a hearing officer.

 At the hearing, Dixon was represented by a counsel substitute.

Dixon pled not guilty to the charge, claiming that there was

information in his file indicating that he was designated as "a

single lock only" and, therefore, was not required to share a cell

with another inmate. However, there were no orders in Dixon's

medical or institutional files directing that he be assigned to a

single-inmate cell and Dixon failed to produce any documents from

his own records to support his claim. Dixon was granted

1
 Infractions "preceded by an asterisk (*) are considered the most
serious and result in the most severe sanctions." N.J.A.C. 10A:4-
4.1(a).
2
 Dixon used the term "double lock" to indicate that he did not
want to share a cell with another inmate.

 2 A-1941-15T3
confrontation of Officer Barrett, who confirmed that Dixon refused

to move to the new cell. The hearing officer denied Dixon's

request to confront several other officers because they had not

witnessed the incident. Dixon did not call any other witnesses

on his own behalf.

 At the conclusion of the hearing, the hearing officer found

Dixon guilty of refusing a housing unit assignment and sanctioned

him to time served in detention, ninety days' of administrative

segregation, and thirty days' loss of television privileges. Dixon

filed an administrative appeal and, on November 5, 2015, the

Administrator upheld the hearing officer's findings and sanctions.

 While that matter was pending, Dixon sent a letter to a DOC

Assistant Commissioner and the Administrator. In the September

14, 2015 letter, Dixon alleged that he was entitled to "single

cell status." Toward the end of his letter, Dixon stated, "I fear

placing me in a cell will end with my death or the death of my

cellmate. Given my military training, it is more likely the

latter. Either way, I will never leave prison. This is not what

I want!"

 As a result of the threat contained in the letter, Dixon was

charged with attempting to disrupt or interfere with the security

 3 A-1941-15T3
or orderly running of the correctional institution3 and, following

an investigation, the matter was referred to a hearing officer.

Dixon was again represented by counsel substitute. Dixon pled not

guilty, and asserted that he did not threaten anyone because he

did not know who his cellmate would be and did not say that he

would definitely kill that individual. Because the charge was

based on the letter Dixon sent to the prison administrators, the

hearing officer denied Dixon's request for confrontation of

officers who were not involved in the matter. Dixon did not call

any witnesses.

 Based upon the evidence presented, the hearing officer found

Dixon guilty of the charge and sanctioned him to 180 days' of

administrative segregation, 365 days' loss of commutation time,

and thirty days' loss of recreation privileges. Dixon filed an

administrative appeal and, on October 13, 2015, the Administrator

upheld the hearing officer's findings and sanctions. This appeal

followed.

 On appeal, Dixon argues there was insufficient evidence in

the record to support the hearing officer's finding of guilt on

3
 The DOC initially charged Dixon with institutional infraction
*.005, threatening another with bodily harm. However, the hearing
officer later modified the charge to attempting to disrupt or
interfere with the security or orderly running of the correctional
institution under *.803/*.306.

 4 A-1941-15T3
both charges and asserts that his due process rights were violated

by the DOC during its handling of the charges. We disagree.

 The scope of our review of an agency decision is limited. In

re Taylor, 158 N.J. 644, 656 (1999). "An appellate court

ordinarily will reverse the decision of an administrative agency

only when the agency's decision is 'arbitrary, capricious or

unreasonable or [] is not supported by substantial credible

evidence in the record as a whole.'" Ramirez v. Dep't of Corr.,

382 N.J. Super. 18, 23 (App. Div. 2005) (alteration in original)

(quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).

"'Substantial evidence' means 'such evidence as a reasonable mind

might accept as adequate to support a conclusion.'" Figueroa v.

Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting

In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

 Prison disciplinary hearings are not part of a criminal

prosecution, and the full spectrum of rights due to a criminal

defendant does not apply. Avant v. Clifford, 67 N.J. 496, 522

(1975). However, when reviewing a determination of the DOC in a

matter involving prisoner discipline, we consider not only whether

there is substantial evidence that the inmate committed the

prohibited act, but also whether, in making its decision, the DOC

followed regulations adopted to afford inmates procedural due

process. See McDonald v. Pinchak, 139 N.J. 188, 194-96 (1995).

 5 A-1941-15T3
 Having considered the record in light of the foregoing

principles, we conclude that sufficient credible evidence in the

record supports the DOC's determination that Dixon was guilty of

refusing a housing unit assignment, and attempting to disrupt or

interfere with the security or orderly running of the correctional

institution. With regard to the first charge, Dixon does not

dispute that he refused to comply with Officer Barrett's order to

move to a new cell. Although Dixon argued that he was entitled

to single-cell status, there was nothing in his medical,

administrative, or personal records to support his claim.

 Turning to the second charge, Dixon's threat to kill any

inmate assigned to his cell was clear from the face of his letter

to the prison officials. Contrary to Dixon's contention, the

hearing officer was not required to accept his later claim that

he did not actually intend to carry out his threat. The hearing

officer's credibility determination on this point is entitled to

deference on appeal. Taylor, supra, 158 N.J. at 659.

 Dixon's due process claims also lack merit. As noted above,

an incarcerated inmate is not entitled to the full panoply of

rights in a disciplinary proceeding as is a defendant in a criminal

prosecution. Avant, supra, 67 N.J. at 522. An inmate is entitled

to written notice of the charges at least twenty-four hours prior

to the hearing; an impartial tribunal; a limited right to call

 6 A-1941-15T3
witnesses and present documentary evidence; a limited right to

confront and cross-examine adverse witnesses; a right to a written

statement of the evidence relied upon and the reasons for the

sanctions imposed; and, where the charges are complex, the inmate

is permitted the assistance of counsel substitute. Id. at 523-

29. Based upon our review of the record, we are satisfied that

Dixon received all the process an inmate is due.

 Affirmed.

 7 A-1941-15T3