**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1035-18T4

ESTATE OF L.P.,

    Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES,

    Respondent-Respondent.

_____

Submitted October 28, 2019 – Decided November 12, 2019

Before Judges Fasciale and Mitterhoff.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

P.P., as executor of the estate of L.P., appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Mark D. McNally, Deputy Attorney General, on the brief).

PER CURIAM

P.P., legal guardian and executor of his mother L.P.'s estate (the Estate), appeals from a September 27, 2018 final agency decision by the Department of Human Services Division of Medical Assistance and Health Services (DMAHS), adopting the Administrative Law Judge's (ALJ) initial decision that granted DMAHS's motion for summary decision. DMAHS concluded that P.P. failed to satisfy the criteria for an undue hardship waiver or compromise of an Estate Lien imposed against the Estate. We affirm.

DMAHS provided Medicaid benefits to L.P. from March 2012 through the time of her death in January 2017. At the time of L.P.'s death, she did not have a surviving spouse, a child under the age of twenty-one, nor a child who was blind or permanently and totally disabled. Consequently, DMAHS held a statutory lien claim in the amount of $132,755.39 against the Estate for correctly paid medical assistance benefits, pursuant to N.J.S.A. 30:4D-7.2 to -7.6 (the Estate Lien).

On June 20, 2017, DMAHS sent a letter to P.P. advising him of the Estate Lien's existence, amount, and basis under federal and state law. The letter also provided P.P. with the procedure to request a waiver or compromise of the Estate Lien based on undue hardship grounds. On July 5, 2017, P.P. requested a waiver of the Estate Lien. In the letter, P.P. asserted that the sole asset of the Estate

2

was L.P.'s single-family home (the Property). P.P. explained that he provided the funds to maintain the home during the last years of L.P.'s life, and it was his and his siblings' understanding that, in return for these personal loans, he would be reimbursed by the Estate and receive the interest from the sale of the Property.[1] P.P. maintained that he was unaware DMAHS would request reimbursement for the medical assistance services provided to L.P.

On September 7, 2017, DMAHS denied P.P.'s request for an undue hardship waiver of the Estate lien. DMAHS explained:

> According to Realtor.com[, the Property] is currently listed for $234,500. The proceeds from the sale of this property should be sufficient to pay [DMAHS's] lien; therefore this is not an insolvent estate. Personal loans made to your mother while she was living are not considered an allowable expense of the [E]state. Therefore, DMAHS cannot reduce our lien.

On September 22, 2017, P.P. requested a Fair Hearing before the Office of Administrative Law (OAL) regarding DMAHS's denial of his request for an undue hardship waiver or compromise of the Estate Lien. Shortly thereafter, DMAHS transmitted the matter to the OAL. DMAHS filed a motion for summary decision.

---

[1] The Property was sold, and DMAHS's lien claim of $132,755.39 was paid in full at that time.

The ALJ conducted oral argument in April 2018. On August 8, 2018, an order of extension was executed, extending the time that the ALJ could submit his initial decision. On August 30, 2018, the ALJ issued his initial decision granting DMAHS's motion for summary decision and upholding the imposition of the Estate Lien. In his written decision, the ALJ considered the facts and applicable law governing the imposition of estate liens for Medicaid beneficiaries, and he determined that P.P. did not qualify for an undue hardship waiver. He also noted that both P.P. and J.P. (L.P.'s daughter) executed documents on several different occasions that explicitly stated Medicaid disbursements may be reimbursed from L.P.'s estate. DMAHS then issued its final agency decision, adopting the ALJ's decision in its entirety.

On appeal, P.P. argues that he should have received a waiver or compromise of the lien as a result of fraud, violation of his due process rights, the caregiver exemption, injustice, and/or the existence of extraordinary circumstances. We affirm substantially for the reasons given by the ALJ, which DMAHS adopted, and we conclude that P.P.'s arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add the following remarks.

Our scope of review of an agency decision is limited.  In re Stallworth, 208 N.J. 182, 194 (2011).  "An appellate court ordinarily will reverse the decision of an administrative agency only when the agency's decision is 'arbitrary, capricious or unreasonable or [] is not supported by substantial credible evidence in the record as a whole.'"  Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23 (App. Div. 2005) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).  However, "an appellate court is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue[.]'"  In re Carter, 191 N.J. 474, 483 (2007) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

Medicaid is a federally created, state-implemented program that provides "medical assistance to the poor at the expense of the public."  Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004) (internal quotation and citation omitted).  A state is not required to participate in Medicaid, but once it has been accepted into the program, it must comply with federal law.  Harris v. McRae, 448 U.S. 297, 301 (1980); 42 U.S.C. 1396a(a) to (b).  New Jersey implements the Medicaid program through the New Jersey Medical Assistance and Health Services Act,

N.J.S.A. 30:4D-1 to -19.5. DMAHS is the State agency that administers the New Jersey Medicaid program. N.J.S.A. 30:4D-5.

Federal and State statutes require DMAHS to recover against an individual's estate for the cost of medical assistance benefits correctly paid under a State Plan. 42 U.S.C. 1396p(b)(1)(B); N.J.S.A 30:4D-7(j). N.J.S.A. 30:4D-7(j) authorizes DMAHS "[t]o take all necessary action to recover the cost of benefits correctly provided to a recipient from the estate of said recipient[.]" In order to recover the cost of the benefits, DMAHS may place a statutory lien against the estate of a Medicaid beneficiary. N.J.S.A. 30:4D-7.2. By regulation, estate liens are imposed where the deceased recipient leaves no surviving spouse, children under the age of twenty-one, or children who are blind or permanently and totally disabled. N.J.A.C. 10:49-14.1(a).

Here, each requirement was met in order to properly place a lien against L.P.'s estate. At the time of L.P.'s death, she did not leave a surviving spouse; her children were older than twenty-one; and they were not blind nor permanently and totally disabled. Thus, the lien was properly imposed against L.P.'s estate.

When DMAHS makes a claim for recovery, the beneficiary's estate representative may apply to DMAHS for a waiver or compromise of the claim

A-1035-18T4

based on grounds of undue hardship. N.J.A.C. 10:49-14.1(h). That is, DMAHS may waive or compromise an estate lien where reimbursement of the lien would constitute an undue hardship. Ibid. According to the regulation, "[u]ndue hardship can be demonstrated only if the estate subject to recovery is or would become the sole income-producing asset of the survivors, and pursuit of recovery is likely to result in one or more of those survivors becoming eligible for public assistance and/or Medicaid benefits." N.J.A.C. 10:49-14.1(h)(1).

In his written decision, the ALJ acknowledged P.P.'s maintenance and upkeep of the Property, but he concluded that P.P. failed to proffer any evidence demonstrating an undue hardship. We agree. The Property was not P.P.'s sole income-producing asset—it is a single-family home. And P.P. did not present any evidence to demonstrate that pursuit of recovery by DMAHS would likely result in P.P. or one of his siblings becoming eligible for public assistance. Accordingly, P.P. did not establish an undue hardship.

Furthermore, P.P.'s fraud argument is unavailing. P.P. argues that despite DMAHS's right to recover payments pursuant to N.J.A.C. 10:49-14.1(h), the agent from L.P.'s senior daycare facility misrepresented the Medicaid plan by allegedly stating that the family would not be billed for the services. As the ALJ noted, P.P. failed to provide any evidence, such as a certification or affidavit,

7

from the individual that allegedly told J.P. that there would be no cost to the family for the Medicaid plan. On three separate occasions, P.P. and J.P. signed documents that explicitly stated DMAHS could be reimbursed by the beneficiary's estate for correctly paid medical assistance benefits. In November 2011, J.P. signed the enrollment form, which provided information about Medicaid liens. The form stated:

> A lien is placed on property after the death of the beneficiary if there is no surviving spouse, no surviving child under [twenty-one] years old, and no surviving child who is blind or totally and permanently disabled. The amount claimed as a lien will be equal to the amount of assistance DMAHS provided to a Medicaid beneficiary.

P.P. also signed an application form on behalf of L.P., which stated, "I understand that Medicaid benefits received after age [fifty-five] may be reimbursable to the State of New Jersey from my estate." P.P. signed this form three times and on three separate occasions—January 2013, October 2014, and February 2016. It is undisputed that P.P. and J.P. signed these documents. However, P.P. asserts that at the time of the signing, verbal information was provided that contradicted the information in the documents. But again, P.P. failed to supply evidence of these verbal statements.

A-1035-18T4

Moreover, even assuming that P.P. was unaware of DMAHS's right to seek reimbursement from L.P.'s estate, awareness is immaterial to whether or not DMAHS may recover from a beneficiary's estate. N.J.S.A. 30:4D-7(j) provides that it is DMAHS's duty "[t]o take all necessary action to recover the cost of benefits correctly provided to a recipient from the estate of said recipient[.]" Thus, it is immaterial whether or not P.P. was aware that DMAHS would request repayment for the medical care and services provided to L.P.

Next, we briefly address P.P.'s contention that DMAHS erred by not considering the caregiver exemption, set forth in N.J.A.C. 10:71-4.10(d)(4). He maintains that because J.P. lived with and took care of L.P., the caregiver exemption should apply.

The caregiver exemption contemplates a transfer of real estate from a parent to the parent's child during the life of the Medicaid beneficiary for less than fair market value. N.J.A.C. 10:71-4.10. The exemption permits a waiver of a penalty imposed for the transfer of assets that occurs prior to or after establishing Medicaid eligibility. N.J.A.C. 10:71-4.10(a). Moreover, this exemption is relevant only to transfer penalties, not estate liens. N.J.A.C. 10:71-4.10(d). L.P. did not transfer the Property to any of her children during her lifetime. Therefore, the caregiver exemption is inapplicable.

Lastly, P.P. argues that the ALJ and DMAHS erred by failing to acknowledge his personal loans to L.P., which prevented foreclosure of the Property. He asserts that by financially maintaining and preventing foreclosure on the Property, he saved the State money in institutionalized care for L.P. P.P. maintains that "rare circumstances" exist in this case, warranting a waiver.

The ALJ acknowledged P.P.'s efforts and expenditures to maintain the property. In his initial decision, the ALJ stated:

> There is no question that these expenditures by [L.P.'s] son were reasonable and necessary both for the maintenance and upkeep of the property and for the well-being of L.P . . . . I also appreciate the time, effort and outlay made on L.P.'s behalf. Unfortunately, those factors do not apply, and I am constrained by the well settled law in cases of this nature.

As the ALJ noted, the factors argued by P.P.—that he paid to keep the Property from foreclosure and paid other maintenance bills—does not establish a claim for a waiver or compromise of the Estate Lien. The regulations do not provide an exception or exemption for exceptional circumstances. See N.J.A.C. 10:49-14.1(h). To secure a waiver or compromise of an amount due, the requesting party must prove an undue hardship. N.J.A.C. 10:49-14.1(h)(1) unambiguously provides, that "[u]ndue hardship can be demonstrated only if the estate subject to recovery is or would become the sole income-producing asset of the survivors,

and pursuit of recovery is likely to result in one or more of those survivors becoming eligible for public assistance and/or Medicaid benefits." P.P. did not satisfy either criteria, and therefore, DMAHS properly imposed the Estate Lien.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11