**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0291-18T1

RAHEEM A. PAMPLIN,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted November 4, 2019 – Decided February 3, 2020

Before Judges Ostrer and Susswein.

On appeal from the New Jersey Department of Corrections.

Raheem Pamplin, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Beonica McClanahan, Deputy Attorney General, on the brief).

PER CURIAM

In this Department of Corrections disciplinary matter, inmate Raheem Pamplin appeals from the finding that he twice possessed contraband drugs, an asterisk offense. See N.J.A.C. 10A:4-5.1(o)(1) *.203 (prohibiting "possession or introduction of any prohibited substances such as drugs, intoxicants or related paraphernalia not prescribed for the inmate by the medical or dental staff"); N.J.A.C. 10A:4-4.1 (stating that "[p]rohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions"). We reject Pamplin's contentions that the agency violated his procedural rights and acted arbitrarily and capriciously, and affirm the Department's findings.

According to the agency's evidence presented at Pamplin's hearing, Senior Corrections Officer (SCO) R. Reyes observed Pamplin place something inside his crotch area while he was in the administrative segregation kitchen. Reyes notified his supervisor, Sergeant Comitini. Pamplin was then ushered into a room where SCO A. Pozo conducted a strip search. While doing so, Pamplin handed Pozo "one masking tape filled with [a] green leafy substance." A subsequent field test confirmed the substance was marijuana.

Thereafter, SCO N. Barton searched Pamplin's cell and found paper-wrapped pills hidden in a box of sugar. A quality assurance specialist determined, based upon the pills' shapes and markings, that one was Benadryl,

and the other was Clonidine. According to Pamplin's electronic medical record, he had never had an "active order" for either medicine while incarcerated. Based on these findings, Pamplin was ordered to be transferred to another prison. Officer Barton conducted an inventory of Pamplin's living quarters, and noted that no other contraband was found.

The hearing officer considered the written reports of officers Pozo and Barton. In response to Pamplin's request, the hearing officer asked the investigating sergeant to produce all video footage of Pamplin entering the strip search room. But, the sergeant reported that no video was available. Pamplin posed written questions to Reyes, Pozo and Comitini. In addition to confirming their previous reports, Reyes stated he was not present for Pozo's search, but Comitini said he was. There was some discrepancy in the responses regarding who actually escorted Pamplin to the strip search area. When asked who escorted Pamplin to be strip searched, Reyes said he "wasn't there for that." Comitini answered the same question, stating, "Reyes brought him over from [the] kitchen."

A-0291-18T1

Pamplin denied possessing the marijuana. According to the adjudication report, he admitted that he possessed a Benadryl pill because he was allergic to seafood, and he contended that he had "a Rx for neurotin [sic]."[1]

The hearing officer found Pamplin guilty of the two *.203 violations and imposed concurrent terms of 180 days of administrative segregation, and consecutive terms of 180 days loss of commutation time. The hearing officer explained that Pamplin refused to take responsibility for his actions and failed to consider the "safety/security of others."

In his administrative appeal to the prison administrator, Pamplin contended that video footage, if provided, would have shown that Pozo never entered the strip search area, and Comitini and Reyes contradicted each other. The administrator upheld the hearing officer's decision, stating it was based on substantial evidence and the sanction was proportionate in view of Pamplin's prior disciplinary history.

On appeal, Pamplin presents the following arguments for our consideration:

> POINT 1. RAHEEM PAMPLIN WAS DENIED PROCEDURAL DUE PROCESS WHEN HEARING

---

[1] We cannot explain the discrepancy between the reference to neurontin and the Clonidine that the quality assurance specialist identified.

OFFICER GONZALEZ REPLACED THE ORIGINAL
HEARING OFFICER WITHOUT EXPLANATION.

POINT 2. RAHEEM PAMPLIN WAS DENIED
PROCEDURAL DUE PROCESS WHEN COUNSEL
SUBSTITUTE TOTH REPLACED COUNSEL
SUBSTITUTE NYAHUMA WITHOUT
EXPLANATION.

POINT 3. RAHEEM PAMPLIN WAS DENIED
PROCEDURAL DUE PROCESS WHEN HEARING
OFFICER GONZALEZ CONSIDERED ILLEGALLY
OBTAINED INFORMATION IN DETERMINING
GUILT.

POINT 4. RAHEEM PAMPLIN RECEIVED
INEFFECTIVE ASSISTANCE OF COUNSEL
SUBSTITUTE DUE TO HIS FAILURE TO ADVISE
INMATE PAMPLIN OF HIS RIGHT TO REQUEST A
POLYGRAPH EXAMINATION AFTER
NUMEROUS INCONSISTENCIES MANIFESTED
DURING THE HEARING.

POINT 5. THE ADMINISTRATOR'S FAILURE TO
ADDRESS THE MERITS OF MR. PAMPLIN'S
APPEAL RENDERS THE DECISION ARBITRARY
AND CAPRICIOUS.

We are obliged to carefully scrutinize the agency's decision, mindful of its important mission to maintain prison safety and security, which is threatened by unauthorized drug use. Blanchard v. N.J. Dep't of Corr., ___ N.J. Super. ___, ___ (App. Div. 2019). We will disturb the agency's decision only if we determine it is "arbitrary, capricious or unreasonable," or is unsupported "by

substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980).

We are unpersuaded that the replacement of the original hearing officer violated Pamplin's due process rights. One hearing officer presided over an initial hearing on May 30, 2018, and a second hearing officer, the decision-maker, presided over hearings on June 1, 4, 5 and 7, 2018. "[I]t is imperative that a single finder of fact receive all the evidence and make determinations based on all of the proofs." Ratti v. Dep't of Corr., 391 N.J. Super. 45, 47 (App. Div. 2007). However, the record indicates that the hearing officer did not receive or consider any substantive evidence or testimony at the first hearing. Rather, the hearing officer postponed the proceedings to allow the receipt of "additional information." Simply put, we are not presented with a situation where "one fact-finder has heard some of the evidence on the focal issue and another fact-finder has heard the remainder of the evidence." Ibid. That would be unacceptable. Ibid. But that is not what happened here.

Nor are we persuaded that Pamplin was denied his due process rights when a new counsel substitute represented him at the final day of hearings, replacing the person who represented Pamplin on all prior occasions. The regulations require the appointment of a counsel substitute when an inmate is charged with

6

an asterisk offense. N.J.A.C. 10A:4-9.12(a). Pamplin cites no authority – and we are aware of none – for the proposition that any substitution would violate due process.

Pamplin also contends that his replacement counsel substitute was ineffective, by failing to request a polygraph on Pamplin's behalf. However, an inmate is not entitled to "formal retained or assigned counsel," Avant v. Clifford, 67 N.J. 496, 537 (1975), let alone the effective assistance of such counsel, see Strickland v. Washington, 466 U.S. 668 (1984) (describing standard for establishing ineffective assistance of counsel guaranteed by the Sixth Amendment). Rather, an inmate is entitled a counsel substitute. Ibid. Although that person must be trained as a paralegal, see N.J.A.C. 10A:6-2.13, -2.14, a counsel substitute cannot be held to the standards of knowledge or diligence of an attorney.

Therefore, it is reasonable to hold that counsel substitutes must meet a minimal standard of diligence, loyalty and knowledge based on the training they receive. See Sheika v. N.J. Dep't of Corr., 395 N.J. Super. 266, 276 (App. Div. 2007) (referring to the entitlement to the "effective assistance of counsel substitute"). If they do not meet that minimal standard, then the right to a counsel substitute is an empty one. Nonetheless, a disciplinary decision should

be disturbed only if a counsel substitute's failure to provide a minimal level of competence causes the inmate prejudice. Cf. Strickland, 466 U.S. 668 (requiring a showing of prejudice as one of two essential elements of an ineffective assistance of counsel claim).

Without charting the precise boundaries of such a minimal standard of competence, we are satisfied that Pamplin was not deprived of his rights. A minimally competent counsel substitute was not compelled to request a polygraph in this case. An inmate's right to a polygraph is not absolute; a prison administrator may grant a request for one if "there are issues of credibility regarding serious incidents or allegations which may result in a disciplinary charge[.]" N.J.A.C. 10A:3-7.1(a)(1). "[T]he request should be granted when there is a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary process." Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 20 (App. Div. 2005).

"Impairment may be evidenced by inconsistencies in the [corrections officer's] statements or some other extrinsic evidence involving credibility, whether documentary or testimonial, such as a statement by another inmate or staff member on the inmate's behalf." Id. at 24. On the other hand, a polygraph would not be required to assure fundamental fairness "when there is sufficient

corroborating evidence presented to negate any serious question of credibility." Ibid.

Although Pamplin has identified minor inconsistencies in the responses of the corrections officers to his written questions, they do not contradict Reyes's statement that he saw Pamplin shove something into his crotch area; and Pozo's statement that Pamplin surrendered the masking tape filled with the vegetation during the strip search. Furthermore, the production of that item corroborates the officers' key statements.

Pamplin's remaining points warrant only brief comment. There was no inconsistency in Officer Barton's reports. He found the pills in his first reported search, and then found nothing more while inventorying Pamplin's possessions. Also, the hearing officer did not rely on illegally obtained information in the form of the nurse's statement that he was not prescribed the drugs seized from his footlocker. "Medical . . . information may be made available to Department of Corrections staff to whom the information is relevant in connection with the staff person's need to make a decision concerning the inmate such as . . . discipline." N.J.A.C. 10A:22-2.6(b)(2).

Nor did the administrator act arbitrarily or capriciously in upholding the hearing officer's decision on the basis of substantial evidence. The administrator

was not required to say more. "Substantial evidence has been defined alternately as 'such evidence as a reasonable mind might accept as adequate to support a conclusion,' and 'evidence furnishing a reasonable basis for the agency's action.'" Blanchard, ___ N.J. Super. at ___ (quoting Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010)); see also N.J.A.C. 10A:4-9.15(a) (stating that "substantial evidence" must be the basis for finding guilt at a disciplinary hearing). Substantial evidence in the form of the officers' statements and the contraband itself supported the hearing officer's finding, which in turn supported the administrator's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0291-18T1