**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2682-18T2

LIONELL G. MILLER,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted January 13, 2020 – Decided March 20, 2020

Before Judges Sabatino and Sumners.

On appeal from the New Jersey Department of Corrections.

Lionell G. Miller, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Nicholas A. Sullivan, Deputy Attorney General, on the brief).

PER CURIAM

Lionell G. Miller, an inmate under the care and custody of the New Jersey Department of Corrections (DOC), appeals from the agency's final determination upholding a finding of guilt and the sanctions imposed against him for committing prohibited act *.002, assaulting any person, N.J.A.C. 10A:4-4.1(a)(1)(ii).

On appeal, Miller argues:

> I. THE DISCIPLINARY HEARING OFFICER FAILED TO CONSIDER MITIGATING FACTORS THAT SUPPORTED APPELLANT'S SELF-DEFENSE CLAIM AND FAILED TO MAKE SPECIFIC FINDINGS IN SUPPORT OF HER ULTIMATE DECISION.
>
> II. APPELLANT WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS AS A RESULT OF HIM NOT BEING ALLOWED TO PRESENT DOCUMENTARY EVIDENCE IN HIS DEFENSE.
>
> III. THE ADMINISTRATOR'S DENIAL OF APPELLANT'S REQUEST FOR A POLYGRAPH TEST WAS AN ABUSE OF DISCRETION AND A DENIAL OF APPELLANT'S RIGHT TO DUE PROCESS OF LAW.
>
> IV. THE DISCIPLINARY HEARING OFFICER'S ADJUDICATION OF GUILT WAS NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE. THUS, APPELLANT WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS OF LAW.

We reverse and remand because we conclude the agency's decision denying Miller a polygraph examination was a mistaken application of discretion undermining the fundamental fairness of the proceeding.

I

The record from the agency's disciplinary proceedings reveal the following.  In his disciplinary report, East Jersey State Prison Corrections Officer G. Saucedo stated, while trying to secure Miller in his cell, he got into a dispute with Miller, who "meander[ed] and refused . . . orders" after exiting the showers.  Miller then "aggressively and violently" approached Saucedo, leading to a physical altercation, during which Saucedo deployed oleoresin capsicum spray ("OC spray" or "mace") on Miller after Saucedo fell to the floor. According to Saucedo, while he was on the floor, Miller struck him numerous times with a closed fist before DOC staff arrived to intercede.  Sergeant Adamson, and officers B. Krueger,  E. Llerena, and  P. Zegadlo issued reports stating they observed Miller striking Saucedo while Saucedo was on the floor and had to use force to remove Miller from Saucedo and subdue Miller by placing him in handcuffs.  Both Miller and Saucedo were taken to the hospital emergency room for medical evaluations.  Miller was charged with prohibited acts *.002, assaulting any person, *.256, refusing to obey an order of any staff

member, and *.306, conduct which disrupts or interferes with the security or orderly running of the correctional facility.

As one might expect, Miller's recollection of the incident differed completely from Saucedo's. In his statement of written defense, Miller contended he was not exiting the shower but was on the telephone when he was prematurely ordered by Saucedo to get off and return to his cell. He was using two free five-minute phone calls allowed by the correctional facility's phone carrier provider for Christmas holiday calls. According to Miller, as he walked to his cell, Saucedo got angry over his vocal objections and, without provocation or justification, maced him in the face. Saucedo then allegedly grabbed and wrestled Miller to the floor. Miller claims he only got physical with Saucedo to defend himself.

In support, Miller submitted three handwritten statements from fellow inmates disclosing their versions of the incident.[1] Two of them stated they were in their cells when they heard arguing, pointed their mirrors out of their cells and saw Saucedo mace Miller without cause. The other stated he saw Miller

---

[1] The record also contains a fourth statement by an inmate, who stated he "didn't see what happened."

A-2682-18T2

and Saucedo get into an argument over Miller's use of the telephone and "it looked like a physical altercation may [b]egin, and it [d]i[d]."

The initial disciplinary hearing date was postponed because Miller requested a polygraph examination, video footage of the altercation, and copies of the shower and phone logs. Prison Administrator Patrick A. Nogan denied the polygraph request, stating in a memo to Miller that "[a]ny issues of credibility can be addressed at the time of the hearing with the Disciplinary Hearing Officer." Miller was later informed there was no video available of the altercation, and shower and phone records were not available because they are discarded at the end of each day.[2]

The next hearing date was postponed because Miller requested that Saucedo answer confrontational questions.

When the hearing date was eventually conducted, Miller reiterated his claim he was defending himself from Saucedo's unprovoked assault with mace. After considering all the evidence, including Saucedo's answers to Miller's confrontation questions, Miller was found guilty of *.002, assaulting any person, and he was sanctioned 211 days of administrative segregation, 211 days loss of

---

[2] The DOC's submission does not explain why these potential evidential items are discarded or deleted at the end of the day.

commutation time, and thirty days loss of recreational privileges. He was found not guilty of prohibited acts *.256, refusing to obey an order of any staff member, and *.306, conduct which disrupts or interferes with the security or orderly running of the correctional facility. The hearing officer's hand-written decision is difficult to decipher, but it appears the contentions by DOC staff were determined to be credible while Miller and his witnesses were not credible to sustain Miller's self-defense claim.

Prison Administrator Nogan denied Miller's administrative appeal and upheld the hearing officer's finding of guilt and sanctions. The administrator explained there was compliance with inmate discipline regulations, and the hearing officer's decision was based on substantial evidence without misinterpreting any facts and there were no extenuating circumstances outweighing the substantial evidence.

II

We first address Miller's contention in point III of his merits brief that his due process rights were violated by Prison Administrator Nogan's denial of his request to take a polygraph examination. He contends that, in accordance with Ramirez v. Dep't of Corr., 382 N.J. Super. 18 (App. Div. 2005), the DOC abused its discretion in not giving him a polygraph examination, which would have

exposed inconsistencies in Saucedo's assertions as to how the altercation occurred. Specifically, Miller argues Saucedo reported he was falling to the ground when he deployed his OC spray, but in his confrontation answers he states he was five feet away from Miller when he used the OC spray. Miller also maintains the examination was necessary "to strengthen his credibility and his claim that he was acting in self-defense to protect his person against unlawful force that he was the victim of."

N.J.A.C. 10A:3-7.1 allows the prison administrator to request a polygraph in certain situations including circumstances where an inmate charged with disciplinary infractions has sought such a polygraph. While "[a]n inmate's request for a polygraph examination shall not be sufficient cause for granting the request," N.J.A.C. 10A:3-7.1(c), an inmate only has a right to a polygraph test in certain situations. Ramirez, 382 N.J. Super. at 20; but see Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79, 83 (App. Div. 1997) (concluding the appellant did not "have the right to a polygraph test," citing N.J.A.C 10A:3-7.1(c)). "[A]n inmate's right to a polygraph is conditional and the request should be granted when there is a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary process." Ramirez, 382 N.J. Super. at 20. The routine administration of a polygraph "is

clearly not required on every occasion that an inmate denies a disciplinary charge against him." Id. at 23-24. "[F]undamental fairness will not be [a]ffected when there is sufficient corroborating evidence presented to negate any serious question of credibility." Id. at 24. Such "[i]mpairment [of fundamental fairness] may be evidenced by inconsistencies in the [corrections officer's] statements or some other extrinsic evidence involving credibility, whether documentary or testimonial, such as a statement by another inmate or staff member on the inmate's behalf." Ibid. On the other hand, a polygraph would not be required to assure fundamental fairness "when there is sufficient corroborating evidence presented to negate any serious question of credibility." Ibid. We review the administrator's decision to deny a polygraph examination for abuse of discretion. Ibid.

Applying these standards, the record does not support Miller's contention that he was entitled to a polygraph examination because Saucedo gave inconsistent statements as to where Saucedo claimed to be when the altercation with Miller occurred and where he was when he deployed the OC spray on Miller. Saucedo's report clearly states he deployed his OC spray when he was being pushed down by Miller, which occurred after Miller was about "approx[imately five] feet" away and "aggressively and violently charged" him.

A-2682-18T2

In his confrontation answer, Saucedo stated he was within five feet from Miller when the altercation occurred, not when he used his OC spray on Miller. The confrontation question fails to indicate what constitutes "the altercation," however, it seems logical and apparent Saucedo believed that the altercation occurred when Miller was about five feet away and allegedly charged him, after refusing his order to go to his cell.

On the other hand, there were serious questions of credibility before the hearing officer. Although four DOC staff members responded to the altercation between Miller and Saucedo, none of them saw how it started. Miller and two other inmates claiming to have witnessed the start of the altercation, assert Saucedo was the aggressor by macing Miller without provocation. Another inmate witness joined Miller in refuting Saucedo's assertion that Miller was coming out of the shower area just prior to the altercation; they instead contend Miller was on the phone when confronted and directed by Saucedo to return to his cell. Significantly, the DOC reported – without sufficient explanation – there was no video of the incident available.

Under these circumstances, there are fundamental fairness concerns. We conclude it was arbitrary and unreasonable for the DOC to deny Miller's request for a polygraph examination. There are "serious questions of credibility" not

A-2682-18T2

dispelled sufficiently to justify the polygraph denial.  We accordingly remand this matter with a direction to the DOC to arrange the requested polygraph examination.  In light of our decision, we do not address Miller's remaining arguments.

Following the test results, a new hearing shall be conducted taking into account the polygraph evidence and any other proofs that may be developed.  We do not intimate in advance, of course, any view of the outcome of these procedures.  In particular, we do not comment on whether the disciplinary charge may be upheld if, hypothetically, appellant does not fail the polygraph, or the results are inconsistent.

Reversed and remanded for further proceedings in accordance with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2682-18T2