**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1746-23

ARTHUR LOMANDO,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted May 21, 2025 – Decided July 24, 2025

Before Judges Paganelli and Torregrossa-O'Connor.

On appeal from the New Jersey Department of Corrections.

Arthur Lomando, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Eric Intriago, Deputy Attorney General, on the brief).

PER CURIAM

Arthur Lomando, incarcerated in New Jersey State Prison (NJSP), appeals from a November 30, 2023 final agency decision of the New Jersey Department of Corrections (DOC) continuing his placement in involuntary protective custody (IPC). Affording deference to the DOC's decision that was rooted in substantial credible evidence in the record, we affirm.

I.

Lomando began serving a life sentence with sixty-three years' mandatory parole ineligibility at NJSP in November 2019 for several charges including murder. We derive the following facts serving as the basis for Lomando's IPC status from the Special Investigations Division's (SID) August 4, 2023 report summarizing the concerns underpinning the initial and continued protective custody determinations.

In December 2021, SID received notice of an altercation between Lomando and another inmate,[1] and surveillance footage depicted the inmate assaulting Lomando. In April 2022, SID received an additional report regarding a "potential rift" between Lomando and a different inmate, which described the inmate as "rocking [Lomando] to sleep." NJSP staff interviewed Lomando later

_____

[1] To preserve confidential information in the SID report, we do not use names or discuss with specificity the details of the information provided by various sources.

that month, and Lomando authored a statement which indicated another inmate pushed him, and, subsequently, multiple inmates cautioned Lomando not to report to his scheduled location at a later date after learning that two other inmates convinced a third to assault Lomando upon arrival.

In May 2022, SID received further information that Lomando "was being utilized as a scapegoat by inmates who [we]re avoiding paying their debt for contraband," and the next day learned two inmates had attempted to enter Lomando's housing unit to assault him. Lomando was interviewed that day and stated that certain inmates were placing blame on him for their transfer to different locations, and he confirmed the scheme to inflict harm on him. Regarding the plan, he stated in a separate phone call, "They wanted to get me . . . and beat me up," when asked if he thought he would be "jumped." As a result of these threats, on May 13, 2022, prison administration placed Lomando on pre-hearing IPC status. Periodic status reviews were conducted continuing that status.

On June 26, 2023, SID received a request from NJSP administration to review Lomando's IPC status. That same day, an SID investigator interviewed Lomando regarding his IPC status, incorporating into the SID report the history of assaults and threats against Lomando. The report reflected that Lomando

advised he was not in fear of his life, he would feel safe if entered back into the NJSP general population, and he had not been threatened since being placed in protective custody. However, the report indicated "the material facts resulting in . . . Lomando being placed on I[]PC status ha[d] not changed."

Contemporaneously, the DOC issued a statement of reasons for continued IPC placement, noting that the placement followed the recommendation of SID, "w[ould] foster the safe orderly operation within the facility," and "[wa]s made for the safety of the individual inmate." The DOC acknowledged the "[c]onfidential information that was developed" in the SID report indicated the existence of "a threat to [the] individual inmate, a threat to staff[,] and [a] threat[ to] the safe[] orderly operations within the facility."

Lomando was provided written notice of the annual administrative custody hearing pursuant to N.J.A.C. 10A:5-5.4(b), and the notice outlined the purpose of the hearing. The notice advised Lomando could "submit evidence on [his] own behalf either prior to, or at the scheduled hearing," which included "documents, or names of prospective witnesses," and that, "[i]n the event . . . [Lomando] need[ed] additional time to gather evidence, or for other legitimate reasons, [he could] request a reasonable postponement of the protective custody hearing."

A-1746-23

On August 17, 2023, a hearing was held before a Disciplinary Hearing Officer (DHO), who denied Lomando's request to return to the general population. The DHO determined Lomando would "[r]emain in protective custody," "[t]o ensure the safety and security of [the] inmate," citing the history outlined in the SID report. The decision noted Lomando's objection.

On August 22, 2023, Lomando appealed the DHO's decision, arguing that the DHO "failed to establish any [new] threats to and/or against . . . [his] safety or the orderly running of the institution." He contended the record was unclear "that any of [the] information provided was . . . credible, [as] no additional interviews were conducted with . . . [him] or other involved inmates[,] [n]or[] was . . . [he] provided the time to present witnesses on his own behalf." Ultimately, Lomando argued he "did not receive a fundamental fairness [p]rotective [c]ustody [h]earing as required by due process" and N.J.A.C. 10A:5-5.2. Lomando requested either the modification of the DHO's decision and his release from IPC, or alternatively a transfer to another facility in or out of state.

On November 30, 2023, the Associate Administrator denied the appeal, citing the same information presented before the DHO, including the

"adjudication results" from the August 17 hearing, determining Lomando should remain in IPC due to the "safety [and] security concerns of the institution."

II.

On appeal, Lomando argues the DHO's decision was arbitrary and made without substantial credible evidence, less restrictive options were not considered, and the DHO failed to abide by required procedure. He claims the DOC did not afford him a fair hearing or the ability to construct an adequate defense, depriving him of due process. Lomando avers his continued IPC placement is contrary to the Isolated Confinement Restriction Act, N.J.S.A. 30:4-82.5 to -82.11, "requir[ing] use of less restrictive options."

The DOC contends Lomando received due process, and sufficient, credible evidence in the record "shows that there are credible threats to Lomando's safety, necessitating his IPC placement." It emphasizes that the length of Lomando's sentence requires housing at NJSP—"the only all-maximum-security facility in the [S]tate," and the prior attempts to relocate him out of State have not been successful.[2]

---

[2] While his administrative appeal was pending, Lomando requested transfer to Maine, which the DOC approved, but Maine denied, in June 2024. Lomando also requested transfer to Wyoming, but the record does not indicate the status of his application.

A-1746-23

III.

Our review of an agency decision is limited. See In re Stallworth, 208 N.J. 182, 194 (2011). It is well-settled that "[a] 'strong presumption of reasonableness attaches to [an agency decision].'" Meyers v. State Health Benefits Comm'n, 474 N.J. Super. 1, 8 (App. Div. 2022) (second alteration in original) (quoting Parsells v. Bd. of Educ. of Borough of Somerville, 472 N.J. Super. 369, 375 (App. Div. 2022)). "An appellate court ordinarily will reverse the decision of an administrative agency only when the agency's decision is 'arbitrary, capricious or unreasonable or [] is not supported by substantial credible evidence in the record as a whole.'" Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23 (App. Div. 2005) (alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). A reviewing court cannot substitute its own judgment in place of the agency; instead, it must consider an agency's "special 'expertise and superior knowledge of a particular field.'" Stallworth, 208 N.J. at 195 (quoting In re Herrman, 192 N.J. 19, 28 (2007)).

We note initially that Lomando's placement arises from safety concerns, not disciplinary action; and he cannot waive this protection, as the responsibility for his safety rests with the DOC. See N.J.S.A. 30:1B-3(c). We further

recognize that protective confinement does not implicate a constitutionally protected liberty interest.  See Sandin v. Connor, 515 U.S. 472, 484 (1995).

Affording deference to the DOC's specialized decision making, we perceive no reason to disturb the DOC's determination.  Again, the Legislature declared the DOC is obligated to "provide for the custody, care, discipline, training and treatment of adult offenders committed to State correctional institutions."  N.J.S.A. 30:1B-3.  It also mandates "incarcerated offender[s] should be protected from victimization within the institution."  N.J.S.A. 30:1B-3(c).  The DOC's regulations delineate the procedures necessary for IPC placement.  See N.J.A.C. 10A:5-5.2, -5.3.  The record reflects these procedures were followed.

The DOC may place an inmate in protective custody "[o]n the recommendation of . . . [SID]" or "[i]nvoluntarily."  N.J.A.C. 10A:5-5.1(a)(1), (6).  IPC placement is appropriate "only when there is clear and convincing evidence that confinement is necessary to prevent reasonably foreseeable harm and a less restrictive intervention or transfer to another correctional facility would not be sufficient to prevent the harm."  N.J.A.C. 10A:5-5.2(j).  Pursuant to N.J.A.C. 10A:5-5.2 and -5.3, an inmate must be provided written notice of an IPC hearing "as soon as practicable," N.J.A.C. 10A:5-5.2(a), and

[a] copy of the written notice shall be given to the inmate at least [twenty-four] hours prior to the in-person hearing, and may include any of the following:

1. Witnesses' written statements;

2. Documents related to the nature of threat of harm involved; or

3. Other written facts relevant to the need for placement in [p]rotective [c]ustody.

[N.J.A.C. 10A:5-5.2(b).]

Although the inmate is not required to make a statement, he is permitted to oppose the involuntary placement. See N.J.A.C. 10A:5-5.2(c). The inmate shall also have the opportunity to appeal the DHO's decision to maintain the inmate's IPC status to the Administrator. See N.J.A.C. 10A:5-5.3(a).

Thereafter, an inmate placed involuntarily in protective custody "shall, in every case, have an in-person hearing once per year, or more often if necessary, in accordance with N.J.A.C. 10A:5.2 and 5.3." N.J.A.C. 10A:5-5.4(d). If the Administrator, upon recommendation by the Institutional Classification Committee (ICC), is "satisfied that the conditions forming the basis for the inmate's placement in [IPC] have abated or no longer exist and there is no known threat to the safe and secure operation of the correctional facility," the inmate may be released. N.J.A.C. 10A:5-5.5(b).

We are satisfied the DOC adhered to procedural requirements governing IPC placement and conclude the involuntary custody status determination was grounded in sufficient credible evidence in the record. The SID confidential report contained sufficient instances of threats to and altercations with Lomando to warrant the administrative decision to place Lomando in protective custody involuntarily. Review of the DOC's progress notes related to Lomando's status reveals that monthly reviews of his IPC status were conducted and annual in-person hearings were held by the ICC with notice to Lomando.[3]

To the extent we have not addressed any remaining arguments, we determine they lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[3] Lomando's progress notes indicate the ICC conducted in-person hearings on June 2, 2022, September 8, 2022, November 14, 2022, May 26, 2023, December 18, 2023, May 13, 2024, and Lomando was expected to receive a hearing on November 20, 2024, in compliance with N.J.A.C. 10A:5-5.4(d)'s requiring annual in-person review of his IPC status. The notes also show monthly ICC reviews between May 2022 and June 2024, pursuant to N.J.A.C. 10A:5-5.4(a).

A-1746-23